(No. 31705.—

THE PEOPLE *ex rel.* Hollis Honefenger *et al.*, Appellants,
*vs.* MARSHALL J. BURRIS *et al.*, Appellees.

*Opinion filed November 27, 1950—Rehearing denied Jan. 15, 1951.*

Gunn, J., dissenting.

Scott Hoover, State's Attorney, and D. W. Johnston, both of Taylorville, and John J. Baker, of Shelbyville, for appellants.

Lawrence Hoff, of Springfield, and Amos W. Pinkerton, of Taylorville, for appellees.

Mr. Justice Crampton delivered the opinion of the court:

By *quo warranto* instituted by the State's Attorney in the circuit court of Christian County, the legal existence of the Taylorville Community Pleasure Driveway and Park District was challenged on the ground the statute under which the district was organized violates certain provisions of the State and Federal constitutions. The judgment of the circuit court declared the act in question to be valid, and all was legally proper in the organization of the district and election of officers.

Taylorville possessed two public parks, and it became impossible to adequately maintain the two by imposing the maximum tax rate for park purposes. By the establishment of a pleasure driveway and park district under the General Park District Code (Ill. Rev. Stat. 1949, chap. 105, pars. 1-1 to 12-3, incl.,) sufficient tax funds would be obtained to effectuate the purposes of the intended district, one being the adequate maintenance of the two parks by the district. The whole area of the district included Taylorville with an area of around four sections of land, the small incorporated village of Owaneco (with a very small park,) covering less than a section located on State route 29 about nine miles southeast of Taylorville, and about 120 sections of farm land. The whole area is practically square, and is a compact and contiguous one with Taylorville about in the center. The voters of Taylorville and Owaneco substantially outnumber the voters of the remaining 120 sections. Proponents of the park district idea failed to convince the voters of the village and farm areas that their idea was a worthy one, but the proposition to create the district carried by 152 of the 1608 votes cast. Voters residing in Owaneco and in the farm area voted almost unanimously against organization of the district, and the favorable vote cast in Taylorville carried the proposition.

The tax levy ordinance of the district was intended to produce $30,675 at the maximum legal rate which could be extended. Taylorville, using the same maximum rate in the two years prior to the creation of the district, only obtained a maximum of $7,227. A little study of the two sums discloses the rural area, plus the area of Owaneco, will contribute practically three fourths of the district tax, and Taylorville the remainder. The only area outside of Taylorville now requiring the expenditure of the district money for maintenance is the small park in Owaneco.

Section 1 of article IX of the constitution requires the legislature to provide needed revenue by a tax levy made

according to valuation, so that everyone shall pay a tax in proportion to the value of his property. Plaintiffs 'seek to apply this section to the instant case by reading into it, by their interpretation thereof, something in the nature of a proviso, *i.e.*, that revenue so raised shall be for the public needs and for a public purpose pertaining to the district within which the tax is levied and collected. If the objection is founded upon the alleged motive in the minds of those organizing the district, *i.e.*, the shifting of a portion of the tax burden for the maintenance of the two parks in Taylorville to additional taxpayers, such motive does not fall within the scope of an inquiry initiated by a *quo warranto* proceeding. (*People ex rel. Steers* v. *Miller*, 304 Ill. 279.) We are constrained to believe the objection does not go back of the tax levy. Two cases are cited to show the levy to be invalid. *Board of Education* v. *Haworth*, 274 Ill. 538, involved section 5 of the act of 1915 for the payment of high school tuition. (Laws of 1915, p. 631.) The section required the payment of such tuition out of State school funds for the benefit of eighth-grade graduates in school districts without high school facilities. The section was inoperative because it required taxpayers in *other districts* where high schools are maintained to indirectly contribute to the local and corporate purposes of those districts without high schools, and thereby collided with the principle of uniformity and equality of taxation required by section 1. In *Mathews* v. *City of Chicago*, 342 Ill. 120, statutes providing for revolving working cash funds were attacked, one ground being that the statutes provided for funds for a purpose which was not needful and which was not for a public and corporate purpose, in contravention of section 1. The cases do not aid the plaintiffs. Each announces the constitutional provision, applies it to a set of facts so unlike the facts before us that neither case is persuasive. Because the major portion or nearly all of the tax revenue raised

by the district for the maintenance of parks could be applied to the two parks in Taylorville does not establish *ipso facto* that those funds are raised for purposes which are not public and corporate or, as stated in the language of plaintiffs, "for the public needs for a public purpose pertaining to the district within which the tax is levied and collected." Plaintiffs have not shown the act violates the section.

Section 22 of article IV of our State constitution denies to the legislature the right to enact local or special laws which contain a grant to any corporation, association, or individual of a special or exclusive privilege, immunity, or franchise whatever. Section 9 of article IX thereof requires uniformity of taxation in regard to persons and property within the jurisdiction of the body imposing the tax. Both provisions are violated, according to the plaintiffs, because of the fact that the citizens of Taylorville will be the ones to use and enjoy the two parks therein, and other parks, boulevards, and pleasure drives located in Taylorville or thereabouts. On the contrary, they say, little or no benefit by use and enjoyment of such would inure to the rural residents living a considerable distance from Taylorville, which, coupled with the fact that the area of the district outside of Taylorville will bear about three fourths of the district tax burden, resolves itself into a violation of the two sections. The fact that the law under which the district was brought into being may actually be, or appear to be, arbitrary and unreasonable in some of its provisions will not make that law a local or special one. (*Perkins* v. *Comr's of Cook County,* 271 Ill. 449.) The test is not the effect in a given instance on a particular area; it is whether the law operates uniformly throughout the State upon all persons and localities under like circumstances. If it operates as last stated, it is not a local or special law prohibited by section 22. (*People ex rel. Moshier* v. *City of Springfield,* 370 Ill. 541; *Perkins* v.

*Comr's of Cook County,* 271 Ill. 449.) The cases cited by plaintiffs do not support their contentions. *People ex rel. Koch* v. *Rinaker,* 252 Ill. 266, involved the first act allowing the establishment of forest preserve districts. Creation of more than one forest preserve district in a county was prohibited. We held this gave to the inhabitants of the district first organized a special privilege denied to other inhabitants of the county. *Perkins* v. *Comr's of Cook County,* 271 Ill. 449, involved the succeeding Forest Preserve Act. Therein we observed that the second act did not suffer from the above-stated infirmity of the first one. *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 Ill. 302, simply declares that when a statute operates upon a certain class of persons, it is not void special legislation if there be a substantial difference between those persons classified and those not so classified, as shown when that difference is evaluated with reference to the statute's objective which justifies the conferring of the specific right. Involved was an amendment to the Practice Act of 1907. *Millett* v. *People,* 117 Ill. 294, involved a question of whether the State had lawfully exercised its police power when legislating in reference to the weighing of coal at mines. It had nothing to do with section 22 of article IV. *People ex rel. Greening* v. *Bartholf,* 388 Ill. 445, dealt with the "sponsorship" by a city of an airport authority under the Municipal Airport Authority Act of 1943. The sponsoring city was clothed with the power to prescribe the conditions upon which it becomes sponsor. It was held the grant of that power violated section 9 of article IX because the airport authority is required to accept any obligation the sponsor imposes, and the obligation must be paid by taxation imposed by the sponsor and not by the authority. That is unlike the situation confronting the plaintiffs in this case, for here the district imposes the obligations on the inhabitants, and imposes the taxation to pay the obligations. The last case cited by plaintiffs,

*People ex rel. Wilson* v. *Salomon,* 51 Ill. 37, arose when the constitution of 1848 was in force, and that instrument did not allow the legislature to enact a law authorizing a park district to levy and collect taxes. The present constitution does not limit the right of the legislature to delegate to all municipal corporations the power to levy and collect taxes. Each taxpayer of the district, be he a resident of one of the 120 rural sections, Owaneco, or Taylorville, pays district taxes at a uniform rate which is set by the corporate authorities of that district, and not by those of some other municipal corporation. This attack on section 9 is not aided by section 10 of the same article. The latter section prohibits the legislature from imposing any tax upon any municipal corporation, or on the inhabitants or property thereof, for corporate purposes. The inhabitants of the district imposed the tax burden upon themselves when they, by a majority vote, organized the park district under the permissive statute.

Plaintiffs, acting on the premise that the district levies and collects a tax for a private and not a public purpose, assail the act as a denial of due process of law in that property in the district belonging to a payer of taxes thereof is taken to finance a private purpose. We cannot again assume the plaintiffs do not seek to make avail of the allegedly ulterior motives of the organizers of the district. The motives which impelled the organizers are not germane to a *quo warranto* proceeding or to a judicial review thereof. In so far as this record shows, the district was organized for a public purpose. The creation and maintenance of public park municipalities is a proper exercise of governmental power. (*Kocsis* v. *Chicago Park Dist.* 362 Ill. 24; *Robbins* v. *Kadyk,* 312 Ill. 290.) The maximum rate levied by the district is the same as the maximum rate levied by Taylorville in the two years prior to the formation of the district. The fact the cost of maintaining the two parks in Taylorville could not be met

by what that rate produced within the limits of that city, and the district is required to dip into tax money derived from the same levy on property outside the limits of the city, is no proof the taxes levied and collected by the district are for private purposes. There is a lack of proof to sustain the premise, and the point is not well taken.

The assertion is made in plaintiffs' printed argument that the act violates the constitutional rights of the taxpayers of Owaneco and the 120 rural sections because, (a) they are subjected to the additional burden of heavy taxation despite their almost unanimous objection thereto; (b) being so heavily outnumbered by the taxpayers of Taylorville, they are without effective voice in the maintenance and operation of the district. No point is made in the brief on which to fasten the argument, and we are not told which constitution the plaintiffs had in mind, State or Federal. Rule 39 of this court requires that the printed argument accompanying the brief of a party must be directed to the appropriate point set forth in the brief, and the point must be in support of, or in opposition to, a certain assignment of error. The rule requires us to ignore the argument.

Plaintiffs are of the opinion section 2 of article II of the State constitution has been violated by the act because, they say, it allows some of the taxable property belonging to taxpayers in the area outside the limits of Taylorville to be taken from them by taxation without their consent. This relates back evidently to what the organizers of the district allegedly did when they determined what territory, and how much, was to be incorporated into the proposed district. The plaintiffs do not deny that section 2-1(a) of the act was complied with, but they do assert the compliance was a tool or method utilized by the organizers to make sure the affairs of the district would always be controlled by the inhabitants of Taylorville. They are losing their property, it is said, because the legislature, by the act,

gave to the organizers of the proposed district, the uncontrolled discretion to so arrange eligible territory that a minority, in numbers, of taxpayers would pay a large majority of the taxes of the district, and the majority, in numbers, of taxpayers who would pay a small minority of the taxes would always control the affairs of the proposed district for the benefit of the minority taxpayers.

This court, as we have said before, is not concerned with the motives of the organizers of the district when we are called upon to review a *quo warranto* proceeding. Aside from the motive aspect of plaintiffs' contention, the argument is reduced to the proposition that such minority, in numbers, paying the majority of the taxes, possesses a constitutional protection against having their property depleted by taxation imposed upon them against their consent. It has long been settled that the legislature has almost unlimited power to create municipal corporations and delegate to them its power to tax. If the opinion of the plaintiffs is partly based upon the idea that owners of taxable property within the bounds of the district possess a constitutional right not to have their property incorporated into the proposed park district without their consent, they are in error. The district is a municipal corporation brought into being by the legislature for the purpose of wielding such governmental powers of the State as the legislature has by law confided to it. The district is a part of the machinery of government and exercises public functions, for public purposes, as an agency of the State. It is within the power of the legislature to settle the characteristics of those functions, to prescribe the extent and duration of the powers delegated to such agencies, and the means whereby it shall be determined what, and how much, territory the delegated power shall cover. *Geweke* v. *Village of Niles*, 368 Ill. 463; *People ex rel. Taylor* v. *Camargo Community Consolidated School Dist.* 313 Ill. 321.

One of the cases cited by plaintiffs in support of their contention is *Sheldon* v. *Hoyne*, 261 Ill. 222, and it does not help them. The case involved a proviso of the Gas Safety Appliance Act of 1911, whereby power was delegated to a fire marshal to say who shall be amenable to the law, without any limitations being imposed upon his exercise of discretion. We held the proviso bad because of the absence of limitations or of a standard to govern him. The case holds the legislature cannot delegate the right to declare the law, but it can delegate to others the doing of such things it cannot conveniently do itself. The delegation, to be valid, must be accompanied by some limitations or a standard in order to prevent the arbitrary use of the power. The legislature, in delegating the power to form park districts like the one under consideration, set up limitations to govern those entrusted with the power to settle the questions of what, and how much, territory should be incorporated into a proposed district. The limitation is found in section 2-1(a) of the act, as a description of territory which is eligible to be incorporated into a district. That territory must be, "contiguous territory containing within its boundaries two or more incorporated cities, towns, or villages, and lying wholly within the same or adjoining townships, (No portion of which shall be already included in a park district, the corporate authorities of which are authorized by law to levy special taxes or special assessments to maintain a public park.)" It is to be observed the legislature did not command the organizers to honor requests of persons owning taxable property to not include their property in the proposed district, although the property would be eligible for inclusion. The other cases cited by the plaintiffs under this point are no more in their favor than the *Sheldon case*. The legislature has the undoubted power to provide for the establishment of a park district which may embrace territory situated wholly

within, or partly within and partly without, the boundaries of another municipal corporation. (*People ex rel. Curren v. Wood*, 391 Ill. 237.) The plaintiffs have not shown section 2 of article II of our constitution to have been violated in the manner suggested.

It has been argued by the plaintiffs, evidently as a part of the suggested violation of section 2 of article II, that the act violates the constitution because the legislature did not accord to the inhabitants of Owaneco and the 120 rural sections the right to a separate ballot on whether they should be included within the proposed district, the result of that vote to determine the question of their inclusion. The argument really should have specified section 18 of article II of the constitution, for it is an allegation that the election on the question of the organization of the proposed district was not free and equal. That section of the constitution does not guarantee that every person, because of membership in a definite group, with a common interest in the outcome of an election, by reason thereof, has a right to a separate ballot, and that the result of that separate balloting shall determine his and their subsequent status. We have held the bestowal by the legislature of the power to organize a school district confers only a privilege as distinguished from a right. (*People v. Deatherage*, 401 Ill. 25; *Husser v. Fouth*, 386 Ill. 188.) The same is true in the organization of this park district. We cannot discern any reason why the inhabitants of Owaneco and the 120 sections have a right to so vote, when all they have is the privilege of voting in furtherance of legislative policy. Whether the policy of the legislature should have been something else cannot be determined by this court.

Also seemingly tied in with the point and the argument in reference to the alleged violation of section 2 of article II is the argument the act is bad because it does not contain any provision whereby people, who are at odds with the objectives sought to be attained through the organization

of the park district, may work a detachment from the district of the territory they live in. Just because the legislature has seen fit to allow that to be done in respect to other municipal corporations and not in this one is no argument that the act is invalid. The argument is really directed against legislative policy. The legislature has the power to deny the privilege of detachment of territory to this park district, and cannot be compelled to bestow it for the benefit of any group therein. What we have held, in respect to the denial of the right of detachment to school districts, applies with equivalent force to park districts of the character of the one attacked here. See *People* v. *Deatherage,* 401 Ill. 25; *People* v. *Camargo School Dist.* 313 Ill. 321.

The plaintiffs have failed to point out and show conclusively where the act under consideration has violated the State or Federal constitutions. They have not raised in this court a reasonable belief that the legislature has exceeded its authority and have not overcome the presumption in favor of the constitutionality of the act. The judgment of the circuit court of Christian County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE GUNN, dissenting.