THE PEOPLE *ex rel.* J. Richard Royal, State's Attorney, Appellant, *vs.* M. W. CAIN *et al.,* Appellees.

*Opinion filed September 21, 1951.*

J. RICHARD ROYAL, State's Attorney, of Vandalia, for appellant.

SONNEMANN & CORBELL, of Vandalia, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

In a *quo warranto* proceeding instituted by the State's Attorney of Fayette County, on behalf of the People of the State of Illinois, against defendants, members of the Board of Directors of The Fayette County Hospital District, the circuit court of Fayette County, in dismissing plaintiff's complaint, sustained the constitutionality of the Hospital District Law, and held that defendants were the legally appointed members of the board of a hospital district organized in accordance with the terms of the statute.

Inasmuch as the constitutionality of a statute is contested herein, plaintiff has prosecuted this appeal directly to this court.

From the record it appears that on April 6, 1950, the county judge of Fayette County entered an order declaring, in effect, that the Fayette County Hospital District was organized in accordance with "AN ACT providing for the creation and operation of Hospital Districts," approved on July 15, 1949. (Ill. Rev. Stat. 1949, chap. 23, pars. 163.30-163.53, incl.) On April 26, 1950, the county judge appointed the nine defendants herein as the initial board of directors, and, after filing their acceptances, they have

proceeded to act as members of the Board of Directors of the Fayette County Hospital District.

In September, 1950, *quo warranto* proceedings were commenced by the State's Attorney of Fayette County, demanding by what authority or warrant there is in existence the purported hospital district, and by what authority defendants were exercising powers as members of the board of directors thereof.

In their answer, defendants set forth the entire procedure followed in the establishment of the district in accordance with the terms of the Hospital District Law, and in reply thereto plaintiffs challenged the constitutionality of the act, and alleged that any procedure taken in conformity therewith was consequently void and without legal authority.

In the proceeding before the trial court, the parties entered into a stipulation that the only issue raised by the pleadings was the constitutionality of the Hospital District Law. On January 17, 1951, the circuit court of Fayette County entered a judgment dismissing the complaint and the cause and finding that the Hospital District Law was not unconstitutional, and that defendants are the legally appointed members of the board of Directors of the validly organized hospital district.

On this appeal, plaintiff has presented numerous grounds which allegedly render the statute unconstitutional. However, before adjudging the legal sufficiency of each of plaintiff's assertions, reference must be made to the salient provisions of the statute.

The act authorizing the creation of hospital districts in the interest of public health does not apply to counties having a population over 500,000. The act requires districts to be contiguous and to include a population of at least 10,000; it prohibits a district from dividing a municipality, or one hospital district from being incorporated within an existing hospital district.

The organization of a hospital district may be initiated by the filing of a petition with the clerk of the county in which the territory is situated, addressed to the county judge, and signed by 500 or 10 per cent of the voters residing within the territory. The petition shall set forth a description of the territory to be embraced in the proposed district, the names of the municipalities located within the area, the name of the proposed district, the population, and a request that the question of establishing a hospital district be submitted to the electors residing within the limits of the proposed district. The petition must further designate one or more persons to represent the petitioners in the proceedings in the county court, with authority to amend or withdraw the petition.

The petition shall be set for hearing within not less than 30 nor more than 40 days after being filed, and notice of the hearing shall be given by the judge by publication in a designated manner. Upon the hearing, the petitioners may move to amend or dismiss the petition, and if it is not dismissed the judge shall determine the sufficiency of the petition. If the territory, petition, and proceedings are in accordance with the act, the judge shall make such a finding and order an election as prayed for in the petition, to be held not less than 30 nor more than 90 days after the entry of the order.

The statute requires that notice of the election shall state that any such district shall have the powers provided by the act, including the power to levy a tax not exceeding .075 per cent of the fair cash value, as equalized by the Department of Revenue, of all taxable property within the area, for the operation and maintenance of the hospital and other corporate purposes, and the power to issue tax-secured bonds in the manner provided in the act.

The statute thereupon sets forth the detailed election provisions, and provides that if a majority of the voters voting upon the question of the adoption of the act and

establishment of the hospital district shall be in favor thereof, the inhabitants shall be deemed to have accepted the provisions of the act, and the territory deemed an organized hospital district, having the name stated in the petition, which shall be evidenced by an order entered by the judge of the county court.

The statute further provides a procedure whereby an area may become detached from the district if 50 per cent of the voters within any municipality or township included in a hospital district file, within 60 days after the entry of the order evidencing the organization of a hospital district, a petition for the detachment of the territory with the county clerk, addressed to the county judge. However, such detachment is not permissible if it will destroy the contiguity of the territory of the district. A hearing shall be held thereon, as in the case of a formation petition, and if the county judge finds that the petition complies with the act, he shall call an election to be held within the territory proposed for detachment within 30 days, with notice thereof to be given in the manner prescribed in the statute, and with the ballot form designated. If the majority of the votes cast at such election are in favor of detachment, the judge of the county court shall by order declare the territory detached and shall prescribe the altered boundaries of the district.

The act further provides that in case any hospital district organized thereunder shall be coterminous with, or shall include within its corporate limits, in whole or in part, any pre-existing public agency authorized to own and maintain a public hospital and levy taxes for such purposes, then such public agency shall cease to exercise any power after it receives written notice from the Director of Public Health to cease operation of its hospital, which notice shall be given only after the hospital district has placed its facilities in operation. The pre-existing public agency, which is superseded, shall be reimbursed upon such terms

as may be agreed upon by its corporate authorities and the board of directors of the hospital district, for its actual expenditures. The terms of payment and procedure in case of disagreement are specified in the statute.

The alleged unconstitutionality of the foregoing provisions is the basis for plaintiff's institution of this *quo warranto* proceeding. Plaintiff contends, first, that the provisions of the act requiring the county judge to call an election if the petition filed is found to be sufficient, and giving the county judge no discretion as to the territory included beyond the requirements of the act, violates section 2 of article II, the "due-process clause," of the Illinois constitution, and section 19 of article II, which declares that persons ought to find a certain remedy in the law for all wrongs they may receive.

Plaintiff next asserts that the statute delegates legislative powers to the county judge and individuals in violation of section 1 of article IV, and article III of the Illinois constitution, since the act contains no standard by which the judge may determine whether or not a petition for organizing a district should be granted.

Plaintiff further maintains that the act attempts to vest in hospital districts power and jurisdiction coextensive with counties, whereby both political entities have the power to levy taxes against identical property for identical purposes, in violation of the "due-process clause" of the Illinois constitution; that the provision requiring pre-existing public agencies operating hospitals within the district to cease operation also deprives persons of property rights without due process of law; that the act authorizes the levy of a tax and the issuance of bonds for a private purpose, and extends the credit of a municipal corporation to and for the use of a private corporation in violation of sections 9 and 10 of article IX, and separate section 2 of the Illinois constitution; that the detachment provisions violate the due-process clauses of both the Illinois and United States

constitutions; that no reference to the issuance of the nonreferendum bonds is required in the ballot form prescribed by the act, thereby offending section 18 of article II, which declares that all elections shall be free and equal; that the subjects included in the act are not expressed in the title, contrary to the mandate of section 13 of article IV; and that the requirements for the organization of the hospital districts involve arbitrary classifications, prohibited, in effect, by section 2 of article II, and section 22 of article IV of the Illinois constitution.

In adjudicating constitutional questions, it is an established canon of construction that a statute will not be held unconstitutional in the absence of cogent reasons, and all presumptions are in favor of its constitutionality. (*People* v. *William Henning Co.* 260 Ill. 554; *Liberty Foundries Co.* v. *Industrial Com.* 373 Ill. 146; *People* v. *Deatherage,* 401 Ill. 25.) In *People* v. *Deatherage,* the court stated, at page 38: "It is the duty of this court to presume a statute under constitutional attack to be valid, and if the statute be suscepible of two constructions, the interpretation favoring its constitutionality is to be adopted."

With reference to plaintiff's contention that the procedure for fixing the boundaries of hospital districts denies due process of law and a remedy, it is apparent that the statutory procedure is patterned after that prescribed in other Illinois statutes establishing political subdivisions, which have been held constitutional and in which the petitioners are authorized in the first instance to fix the boundaries of the proposed district. *People* v. *Deatherage,* 401 Ill. 25, community unit school districts; *Perkins* v. *Board of County Comrs.* 271 Ill. 449, forest preserve districts; *People ex rel. Armstrong* v. *Huggins,* 407 Ill. 157, fire protection districts.

The Hospital District Law, moreover, protects inhabiants from being forced into a district unjustly, and is democratic in operation. It requires initially that a peti-

tion be signed by 500 or 10 per cent of the legal voters of the area, and persons objecting to the organization of the district may, by a concerted effort, dissuade the inhabitants from signing. Even if the requisite number of signatures is obtained, a hearing is available for further protest, and, if the petition is not amended, if it is found to be sufficient, and an election is ordered, voting resistance against the formation of the district may be organized. Furthermore, even after the district is created, opponents may comply with the detachment procedure allowed by the act.

The foregoing procedure provided by the act safeguards against any unjust or arbitrary inclusion of persons and property within a hospital district. However, it is not a requirement of due process that laws for the formation of municipal corporations allow every person to be included or excluded according to his choice, for such an interpretation would allow individuals to override the will of the majority. Moreover, there is no such thing as a property right vested in the citizens of the State against the imposition of taxes for the public good.

In *People ex rel. Honefenger* v. *Burris,* 408 Ill. 68, where the court upheld the validity of the organization of a park district, the court stated: "It has long been settled that the legislature has almost unlimited power to create municipal corporations and delegate to them its power to tax. If the opinion of the plaintiffs is partly based upon the idea that owners of taxable property within the bounds of the district possess a constitutional right not to have their property incorporated into the proposed park district without their consent, they are in error."

This court cannot sustain plaintiff's argument that the act contemplates an unconstitutional delegation of legislative power to the county court and to the petitioners, and provides no standard for the establishment of the boundaries of the district. Contrary to plaintiff's assertion, the

Hospital District Law sets forth certain unequivocal standards to which the petition must conform before the county judge may deem it to be sufficient. As hereinbefore noted, no district can be formed in counties having a population over 500,000, the boundaries of the district shall not divide any municipality, the territory within the corporate limits of an existing hospital district may not be included in the proposed new district, there must be a population of not less than 10,000 inhabitants, and the territory must be contiguous.

In determining whether legislative functions are imposed upon the courts, it is generally held that if the legislature vests no power in the courts other than to determine the existence of facts set forth in the law, contingent upon the existence of which the law comes into operation, there is no improper delegation of power. 37 Am. Jur. 628.

In *People* v. *Huggins,* where the court sustained the the constitutionality of an act to create fire protection districts, which was challenged on the ground that legislative powers were imposed upon the county judge in determining the boundaries of the district, the court stated: "This provision necessarily means that they are to be heard and permitted to make suggestions to the end that the boundaries conform to the preceding statutory requirements, namely, that the territory of the district be contiguous, and that it may contain territory not previously included in another fire protection district, and further, to make certain that the boundaries of the district are so located as to effectuate the objective of the act, namely, the prevention and control of fire therein. In short, clear cut standards are prescribed to guide the county judge in making his determination as to the boundaries of the district. He is not granted unbridled or unfettered discretion in this respect. Instead, he must follow the standards fixed by the statute when he makes his determination of the boundaries of the proposed district." It is apparent that the legislature

granted the county judge therein even wider latitude than is provided in the Hospital District Law. Nevertheless, the court held that there was no infringement of the constitutional doctrine of separation of powers. Moreover, the duties conferred upon the county court by the Hospital District Law are not novel, and have been repeatedly held to be judicial in character. *Heaney* v. *Northeast Park Dist.* 360 Ill. 254; *People ex rel. Seegren* v. *Sackett,* 351 Ill. 363; *People ex rel. Rusch* v. *White,* 334 Ill. 465.

Nor is there legal merit to plaintiff's contention that the statute delegates governmental powers to individuals, in allowing them to determine initially the boundaries of the district. The procedure of allowing the inhabitants of an area to organize for a particular purpose, according to standards established by the legislature, compliance with which must first be ascertained by the court, is an established practice incidental to local self-government. The hospital district is created, not by the petitioners, but by the voters at an election authorized by the legislature.

The court, in *People ex rel. Taylor* v. *Camargo Community Consolidated School Dist.* 313 Ill. 321, held that a statute permitting detachment of territory from a school district by the voters did not unconstitutionally delegate legislative power to individuals, and stated, at page 328: "Ever since there has been a school law in this State the fundamental principle for the establishment of school districts has been that they should be such as the convenience and wishes of a majority of the inhabitants required. The law has provided for the ascertainment of such wishes and convenience either by petition signed by a majority or more of the legal voters or by elections held for the purpose, and districts have been created, changed, added to, diminished, consolidated and divided upon petitions of the voters to the school authorities and elections. It is not the exercise of either legislative, executive or judicial power for the inhabitants of any territory to avail themselves of the

privilege of organizing a school district in accordance with the authority conferred by a statute which specifies with particularity the rules and conditions under which the organization may be made."

Similarly, in *People ex rel. Honefenger* v. *Burris,* the court sustained the constitutionality of a statute providing for the organization of park districts, and authorizing 100 voters to define the boundaries of the district in a petition to be submitted to the county judge.

It cannot be contended, furthermore, that the act attempts to vest in hospital districts power and jurisdiction coextensive with counties, so that both would have the power to levy taxes for identical purposes in violation of section 2 of article II of the Illinois constitution, inasmuch as the act specifically provides for the cessation of operation of any pre-existing public agency authorized to own and maintain public hospitals and to levy taxes therefor. Moreover, such a provision has been deemed constitutional and valid. (*People ex rel. Greening* v. *Bartholf,* 388 Ill. 445; *People ex rel. Curren* v. *Wood,* 391 Ill. 237.) With reference thereto, the court in *People* v. *Bartholf,* citing *People ex rel. Wies* v. *Bowman,* 247 Ill. 276, and other Illinois decisions, stated, at page 463: "The constitution contains no prohibition against the creation by the legislature of every conceivable description of ·corporate authorities, and the endowment of them, when created, with all the faculties and attributes of other pre-existing corporate authorities. * * * In the organization of park districts located within the jurisdiction of an existing municipal corporation which had the power to create and maintain parks, this court has adhered strictly to the principle that the General Assembly has the power to withdraw from a municipal corporation a power previously given, and confer it upon another municipality." This principle was reiterated in *People* v. *Wood,* where the court sustained the validity of a provision of the Airport Authority

Act specifying that a newly created airport authority shall succeed to the interest of any pre-existing public agency in an existing public airport, located within the corporate limits of the authority.

Plaintiff maintains, however, that the operation of hospitals is a proprietary and not a governmental function, hence, the termination provisions requiring pre-existing public agencies to cease operations infringe private contract and property rights in violation of the fourteenth amendment of the constitution of the United States, and section 2 of article II of the Illinois constitution. It is readily apparent from the terms of the Hospital District Law that it was enacted in the interest of public health (Ill. Rev. Stat. 1949, chap. 23, par. 163.32,) and that the districts were authorized to exercise governmental powers. (par. 163.44.) The statute recites that the establishment, maintenance and operation of safe and accessible hospitals within the State of Illinois and the creation of hospital districts having power necessary for the establishment and continued maintenance of such hospitals are declared and determined to be in the interest of public health. It is further provided that a hospital district shall constitute a municipal corporation and shall exercise certain governmental powers, including the power to establish and maintain a hospital within its corporate limits for the benefit of the inhabitants of the area, regardless of race, creed or color.

It is a fundamental doctrine that laws which tend to promote public health, comfort, safety and general welfare may be deemed a proper exercise of the police power of the State, and that such power is elastic and capable of meeting changing conditions. (*People* v. *John Doe of Rosehill Cemetery*, 334 Ill. 555; *Fenske Bros. Inc.* v. *Upholsterers' International Union*, 358 Ill. 239.) With reference to the nature of this police power the court stated, in *People* v. *Bartholf*, 388 Ill. 445: "* * * It is for the legislature to determine when conditions exist which call

for the exercise of a power, [police power,] and when it has acted, the presumption arises that the act is a valid exercise of such power. [Citations.] The legislature not only determines when there shall be an exercise of the power, but it has the right in matters of local concern to delegate the execution of the power to a municipality * * * or to authorize the organization of a new municipality and vest it with the authority necessary to the execution of the power."

In the instant case, according to the legislative pupose expressed in the act, the legislature determined that, in the interest of public health, the police power should be exercised to authorize the organization of hospital districts charged with owning and operating public hospitals. Hospitals have frequently been the subject of the exercise of the police power. In *Tollefson* v. *City of Ottawa,* 228 Ill. 134, it was held that the maintenance of a hospital by a city under an Illinois statute authorizing the creation of a public hospital by a municipality was an exercise of the police power, as a measure designed to promote the general health and welfare, and was not the exercise of a proprietary function, as urged by the plaintiff therein.

Courts have upheld the constitutionality of measures designed to promote and preserve public health as a legitimate exercise of the police power. In *People ex rel. Village of South Chicago Heights* v. *Bergin,* 340 Ill. 20, the court stated that the formation of a sanitary district was for the preservation of health, which is one of the important objects of government, and that such purpose was within the police power and could be exercised either by the legislature, or by corporations to which the legislature has delegated such power.

Furthermore, it is not unreasonable to consider the creation of public hospitals equally as important and conducive to the public health, safety and welfare, as the establishment of an airport authority, which was deemed gov-

ernmental in nature and a proper exercise of the police power in *People* v. *Wood*, 391 Ill. 237. In that case, as in the case at bar, the argument was interposed that the provisions for the cessation of operations of pre-existing public agencies performing the same operations as the newly created organization, and for the acquisition of the property of the pre-existing agency, destroyed private contract and property rights in violation of the fourteenth amendment of the United States constitution. The court rejected this argument and stated that since an airport authority is a public municipality, and the statutory provision applied only to other public airports found within its boundaries, hence there was no question of the right to compensation for the taking of private property, since municipal corporations acquire no contract rights. The court emphasized that the legislature had the right to control municipalities created by it, and to alter, modify or abolish them, so long as their property is not diverted from the objects for which it was given or purchased. As in the instant case, the statute specifically did not apply to pre-existing private agencies, and, therefore, there was no infringement of private rights.

Inasmuch as the operation of public hospitals has been deemed a governmental function, there can be no private rights held by any pre-existing public agency operating such hospitals, and the legislature has the power to withdraw the function previously authorized under the law creating the pre-existing agency. The Hospital District Law does provide for the reimbursement of actual expenditures of the pre-existing public agency in a prescribed manner, and it is presumed that the facilities owned by such agency would be operated henceforth by the district.

Plaintiff, proceeding on the assumption that the operation of the public hospital is a proprietary and not a governmental function, further contends that sections 20 and 21 (pars. 163.49 and 163.50,) of the Hospital District

Law, authorizing the levy and collection of taxes and the issuance of bonds for the purpose of paying the cost of operating the hospital facilities of the district, violate section 2 of article II, and sections 9 and 10 of article IX, as well as separate section 2 of the Illinois constitution, in that such public funds are devoted to a private purpose. As noted in the decisions, it is not always clear where to draw the line and determine what is a public purpose. (*Chicago Motor Club* v. *Kinney,* 329 Ill. 120.) However, all reasonable doubts should be resolved in favor of the legislative declaration. *Perkins* v. *Board of County Comrs.* 271 Ill. 449, 466.

As hereinbefore noted, the legislative purpose of the Hospital District Law is to promote public health, which may reasonably be deemed a legitimate exercise of the police power. The legislature has the right to delegate the execution of that power to a municipality and vest it with the authority necessary for the execution of the power. (*People* v. *Bartholf,* 388 Ill. 445.) In maintaining public hospitals and hospital facilities, which is its sole corporate purpose, the hospital district is acting as a municipal corporation and exercising powers in the furtherance of its public and corporate purposes. Therefore, the assertion made by plaintiff herein that the public funds derived from taxes and bonds are being expended for a private purpose is untenable.

Plaintiff advances the further argument that inasmuch as section 15 (par. 163.44) of the act grants the directors power to operate, maintain and make contracts for the management of the hospital, as well as to charge reasonable fees and compensation for the use of the hospital, and to borrow money and issue bonds and other evidences of indebtedness for the purposes of the hospital district, which powers are essentially those of private enterprise, the statute therefore violates separate section 2 prohibiting the extension of public credit to a private corporation. This

precise contention was rejected in *People* v. *Wood,* 391 Ill. 237, where the court stated that the power to contract for the use of the airport, and to fix fees and rentals was not inconsistent with the public character of the airport constructed under the act. Furthermore, it is firmly established in judicial precedent that the fact that a fee is charged for the use of a public improvement does not make that use private. (*Carstens* v. *City of Wood River,* 344 Ill. 319; *South Park Comrs.* v. *Montgomery Ward & Co.* 248 Ill. 299; *City of Springfield* v. *Inter-State Telephone and Telegraph Co.* 279 Ill. 324.) Therefore, it cannot properly be urged that the statute herein authorizes public credit to be extended to a private corporation.

On this appeal plaintiff also maintains that the form of the ballot authorized by the statute does not refer to the issuance of nonreferendum bonds, and the act therefore violates section 18 of article II, providing that all elections shall be free and equal. Plaintiff urges that the reference on the ballot to the tax for the operation and maintenance of the hospital facilities, limited to .075 per cent of the assessed valuation of the property within the territory, implies that no further tax will be levied, and if bonds are issued, a further tax will, in fact, be imposed, hence the people are deceived by the form of the ballot. Moreover, plaintiff argues this omission further violates the due-process guarantee of the Federal constitution.

The ballot prescribed by the Hospital District Law does state that the district will have the powers, objects and purposes provided by the act, including the power to levy taxes, but it does not list or pretend to enumerate all of the powers authorized under the act. The notice of the election, however, does refer to the power to issue bonds. In fact, section 7 (par. 163.36) requires that such notice be given.

There is no provision of the Illinois constitution prohibiting the issuance of bonds by a municipality without

submission of the issue to a vote. Therefore, it would not be essential for the voter to specifically approve the issuance of bonds when he votes for the establishment of a hospital district.

Furthermore, the reference to the act or any of its features on the ballot is merely to identify the proposition, and not for the purpose of apprising the voter of the details and powers contained therein. (*State ex rel. St. Louis* v. *Hall*, 335 Mo. 1097; *Coolsby* v. *Stephens*, 155 Ga. 527, 117 S. E. 439.) The general rule with reference to the requirements on the ballot was stated in *Martin* v. *Hart*, 296 Ill. 149, at page 155: "While the ballot must not contradict the petition nor permit a vote upon a different question, there is no objection to the generality of a ballot if it directs the attention of the voter to the proposition upon which he is to vote."

It is, therefore, a sufficient compliance with the constitutional mandate that under the Hospital District Law the voter is given previous notice of the proposition to be voted upon, and the proposition is sufficiently identified by the contents of the ballot so that the voter has a clear opportunity to express his choice and have his vote counted equally with that of any other elector.

Plaintiff asserts further that the detachment procedure prescribed by the Hospital District Law violates sections 2 and 19 of article II of the Illinois constitution and the fourteenth amendment of the United States constitution, inasmuch as the requirements limiting the time for presenting withdrawal petitions to 60 days after the district is organized, and necessitating the signature of 50 per cent of the legal voters of an area wishing to withdraw, are too stringent and onerous.

In addition to the policy consideration, that the continued existence of hospital facilities is of public concern and should not be subject to the whim of a few individuals who wish to withdraw their property from taxation, of

which the legislature was cognizant in drafting the statute, it is apparent that the legislature has absolute control over the continued existence of a municipal corporation and could prevent detachment entirely. I McQuillin, Municipal Corporations, 747; *People* v. *Burris,* 408 Ill. 68.

In the *Burris case,* where the statute contained no provision for detachment of any part of a properly organized park district, the court, in sustaining the constitutionality of the act, stated: "Just because the legislature has seen fit to allow that to be done in respect to other municipal corporations and not in this one is no argument that the act is invalid. The argument is really directed against legislative policy. The legislature has the power to deny the privilege of detachment of territory to this park district, and cannot be compelled to bestow it for the benefit of any group therein." In the light of this decision, the Hospital District Law could not properly be deemed unconstitutional because of allegedly strict detachment provisions.

Plaintiff further interposes the argument that the statute violates section 13 of article IV of the Illinois constitution, since the subjects included in the act are not fully expressed in its title. The constitutional provision that no act shall embrace more than one subject is designed to prevent the joinder of incongruous and unrelated matters in one act. (*Michaels* v. *Barrett,* 355 Ill. 175.) However, if all the provisions of an act relate to one subject, indicated in the title, and are reasonably connected with it, so as not to mislead the General Assembly or the public, there is a sufficient compliance with the constitutional provision, which must be liberally construed. (*Italia America Shipping Corp.* v. *Nelson,* 323 Ill. 427; *People* v. *Roche,* 389 Ill. 361; *Michaels* v. *Barrett,* 355 Ill. 175.) In the instant case, the Hospital District Law does not contain incongruous and unrelated matters. All the provisions are designed to implement the purpose of the act and the subject expressed in the title.

Plaintiff's final contention is that the statute violates the due-process clause, and section 22 of article IV of the Illinois constitution, on the ground that the requirements necessary before a territory can be incorporated into a hospital district are arbitrary and discriminatory. These requirements, as hereinbefore considered, are based on population, contiguity of territory, ability to support a hospital district, and an evidenced intention that the proposition be submitted to a vote. Classification based upon population must be reasonable and have a proper relation to the objects and purposes of the legislation. (*People ex rel. Board of Education* v. *Read,* 344 Ill. 397; *Krause* v. *Peoria Housing Authority,* 370 Ill. 356.) The 500,000-population limitation reasonably excludes the one county of the State with its abundant facilities, where such a central hospital district would neither be practical nor necessary, and the requirement that the territory have a minimum population of 10,000 is reasonably designed to insure the financial support of the hospital. The requirement that the territory be contiguous is not only logical and conducive to simplified administration, but is present in all acts establishing political subdivisions. The requirement that the district shall not include any property within another hospital district is intended to eliminate any scramble for territory between districts and double taxation, and the requirement that a municipality must be wholly and not partially included in a district is consistent with good government structure. Hence, it does not appear to this court that any of the requirements for the establishment of a district under the statute are arbitrary or discriminatory, in violation of the constitutional provisions.

From the foregoing analysis of the numerous constitutional objections interposed by plaintiff on this appeal, it is our judgment that the provisions of the Hospital District Law do not, singly or in concert, violate any of the doctrines and mandates of either the Illinois constitution

or the constitution of the United States. Therefore, the establishment of the Fayette County Hospital District, and the appointment of the defendants as members of the board of directors thereof, in accordance with the statute, were legally valid acts, and the dismissal of plaintiff's complaint in the *quo warranto* proceeding by the circuit court of Fayette County was not erroneous, and should be affirmed.

*Judgment affirmed.*