(No. 77721.—

*In re* PETITION OF THE VILLAGE OF VERNON HILLS to Transfer Territory of the Vernon Fire Protection District to the Countryside Fire Protection District (The Village of Vernon Hills, Appellant, v. Vernon Fire Protection District, Appellee).

*Opinion filed September 21, 1995.—Rehearing denied December 4, 1995.*

118

Richard A. Makarski and George F. Venci, Jr., of Chapman & Cutler, of Chicago, James R. Hermann, of Waukegan, and Adeline J. Geo-Karis, of Zion, for appellant.

Anthony T. Buckun, of Des Plaines (David F. Holland, of counsel), for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

This case concerns the constitutionality of section 14.14 of the Fire Protection District Act (70 ILCS 705/ 14.14 (West 1992) (added by Pub. Act 87—825, § 4, eff. December 16, 1991)). We must determine whether section 14.14 is a special or local law in violation of article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13).

Section 14.14 creates a mechanism whereby a non-home-rule municipality with more than one fire protection district may transfer territory served by one district into another district. It provides in relevant part:

"(a) *In a county having a population of between 500,000 and 750,000,* territory within the boundaries of a non-home rule municipality that receives fire protection services from more than a single fire protection district may be disconnected from one fire protection district and transferred to the district that provides services to the area comprising more than 80% of the municipality's assessed valuation. To disconnect that territory, *** the corporate authorities of the municipality *** may file a petition in the court in which the district *** was organized, setting forth the [listed requirements]." (Emphasis added.) 70 ILCS 705/14.14(a) (West 1992).

Pursuant to this section, the Village of Vernon Hills (Village) filed a petition to disconnect certain territory served by the Vernon Fire Protection District (Vernon Fire) and transfer it to the Countryside Fire Protection District. Vernon Fire filed an objection to and moved to dismiss the petition on the ground that the classification restricting application of section 14.14 to counties having a population between 500,000 and 750,000 persons violates the special legislation provision of the Illinois Constitution of 1970.

At the hearings, the parties stipulated that the Village is a non-home-rule community in Lake County, which at the time was the only Illinois county with a population between 500,000 and 750,000 persons. The record further establishes that the Village satisfied all the requirements for a section 14.14 transfer. See 70 ILCS 705/14.14(a)(2)(A) through (a)(2)(G) (West 1992).

Following the close of the Village's case, counsel for Vernon Fire introduced into evidence a map of Du Page County showing the boundaries of its municipalities and fire protection districts. The county clerk had certified the map as authentic. Counsel also introduced the 1990 Census of Population and Housing for Illinois. This census listed Du Page County as having a population of 781,666 persons. Other exhibits were introduced which concerned two specific municipalities in Du Page County, the City of Warrenville and the Village of Bloomingdale. Local officials certified that both Warrenville and Bloomingdale are non-home-rule municipalities and are being served by more than one fire protection district. These exhibits also contained statistical evidence relevant to the two municipalities and their fire protection districts. Through all the exhibits, Vernon Fire showed that municipalities located in Du Page County are similarly situated to the Village, but cannot utilize section 14.14 because Du Page County has a population of over 750,000 persons. Vernon Fire therefore contended that section 14.14 arbitrarily discriminates against other municipalities in the State and in favor of the Village.

The circuit court of Lake County found section 14.14 to be constitutional. The circuit court granted the Village's petition and ordered the territory transferred from Vernon Fire to the Countryside Fire Protection District, *instanter*.

The appellate court reversed, finding section 14.14

to be an unconstitutional special or local law. (265 Ill. App. 3d 46.) The appellate court held that *In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, controls the present case. We granted the Village's petition for leave to appeal (145 Ill. 2d R. 315). We now affirm the appellate court.

The special legislation provision of the Illinois Constitution of 1970 provides:

> "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, § 13.)

This section prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. *Cutinello v. Whitley* (1994), 161 Ill. 2d 409, 417; *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109-10.

This constitutional provision does not prohibit all classifications; rather, its purpose is to prevent arbitrary legislative classifications. (*Cutinello*, 161 Ill. 2d at 417; *Nevitt v. Langfelder* (1993), 157 Ill. 2d 116, 125.) If any set of facts can be reasonably conceived that justifies distinguishing the class to which the statute applies from the class to which the statute is inapplicable, then the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may enact laws applicable only to those persons or objects. (*Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 236; *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 578.) An act is not an unconstitutional special or local law merely because of a legislative classification based upon population or territorial differences. *Smith*, 21 Ill. 2d at 578.

Classifications drawn by the General Assembly are

always presumed to be constitutionally valid, and all doubts will be resolved in favor of upholding them. (*Bilyk, 125 Ill. 2d at 235.*) *The party who attacks the validity* of a classification bears the burden of establishing its arbitrariness. *People v. Palkes* (1972), 52 Ill. 2d 472, 477.

A special legislation challenge is " 'generally judged by the same standard' " that applies to review of an equal protection challenge. (*Nevitt*, 157 Ill. 2d at 125, quoting *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 368.) The statute now under consideration does not affect a fundamental right or involve a suspect or quasi-suspect classification. Accordingly, the appropriate standard for review is the rational basis test. (*Cutinello*, 161 Ill. 2d at 417; *Nevitt*, 157 Ill. 2d at 125.) Under this standard, a court must determine whether the statutory classification is rationally related to a legitimate State interest. *Cutinello*, 161 Ill. 2d at 417; *Nevitt*, 157 Ill. 2d at 125-26; *Bilyk, 125 Ill. 2d at 236; Christen v. County of Winnebago* (1966), 34 Ill. 2d 617, 619.

This court has further defined the rational basis test when reviewing legislative classifications based upon population or territorial differences. For at least half a century, this court has held that such a classification will survive a special legislation challenge only (1) where founded upon a rational difference of situation or condition existing in the persons or objects upon which the classification rests, and (2) where there is a rational and proper basis for the classification in view of the objects and purposes to be accomplished. (*In re Belmont Fire Protection District*, 111 Ill. 2d at 380; *Chicago National League Ball Club, Inc.*, 108 Ill. 2d at 369; *Bridgewater*, 51 Ill. 2d at 112; *Smith*, 21 Ill. 2d at 578; *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 399.) Although this test has remained the same for more than 50 years, this court in *In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, 380, first labeled it the "two-prong test."

Vernon Fire contends that section 14.14 is unconstitutional special legislation. In support, Vernon Fire cites *Belmont*, which it asserts is strong precedent in its favor.

This court in *Belmont* invalidated, as an unconstitutional special or local law, section 19a of the Fire Protection District Act (Ill. Rev. Stat. 1985, ch. 127½, par. 38.2a). (*Belmont*, 111 Ill. 2d 373.) Section 19a had created a mechanism whereby, in a municipality with more than one fire protection district, territory served by one district could be transferred into another district, provided that the receiving district had already been serving at least 70% of the municipality's territory. (Ill. Rev. Stat. 1985, ch. 127½, par. 38.2a(a)(4).) A population classification limited section 19a's application to counties having a population between 600,000 and 1 million persons, which at the time consisted of only Du Page County.

Petitions were filed in the circuit court, pursuant to section 19a, requesting the transfer of territory from the Belmont and Downers Grove Estates fire protection districts to the Lisle-Woodridge fire protection district. The Belmont and Downers Grove Estates fire protection districts filed an objection to the petitions on the ground that section 19a's population classification violated the constitutional prohibition against special legislation.

At a hearing, counsel for the objecting fire protection districts introduced maps of other counties showing the boundaries of their municipalities and fire protection districts. Counsel also introduced a certified copy of the population count for the 102 counties in the State. Through these exhibits, counsel attempted to show that, since municipalities in other counties of varying populations were being served by more than one fire protection district, the population classification caused section 19a to be an invalid special or local law.

The *Belmont* court applied the "two-prong test" and

concluded that section 19a was unconstitutional. The court stated:

> "We can perceive of no rational reason why a municipality served by multiple fire protection districts in a county with a population between 600,000 and 1 million can be said to differ from a municipality which is served by multiple fire protection districts in a county with less than 600,000 or more than 1 million inhabitants. If a real need exists to eliminate the alleged disadvantages and dangers of multiple fire protection districts serving one municipality, then the same need to remedy this evil also exists in other counties as well, regardless of the level of the population of the county. Because section 19a denies municipalities with similar needs in other similar counties the privilege of consolidating fire protection services into a single fire protection district, the population classification is an arbitrary distinction not founded upon any rational or substantial difference of situation or condition and therefore violates our constitution." (*Belmont*, 111 Ill. 2d at 382.)

The court also explained that section 19a failed the test's second prong because the countywide population classification bore no rational relationship to the purposes of section 19a and the evil it sought to remedy. The court was unable to conceive of any "possible connection [that existed] between the requirement that a *county* have a population between 600,000 and 1 million and the *** desirability of consolidating fire protection services within a given *municipality* into a single fire protection district." (Emphasis added.) *Belmont*, 111 Ill. 2d at 383-84.

The present case is not distinguishable from *Belmont*. The facts are virtually identical. Moreover, a comparison reveals that the statute now under consideration, section 14.14, materially resembles the statute that was involved in *Belmont*, section 19a. The apparent purpose of section 14.14 is to allow non-home-rule municipalities with more than one fire protection district to transfer territory served by one district into

another district, thereby eliminating the smaller fire protection districts within their boundaries. Likewise, in *Belmont*, the apparent purpose of section 19a was the elimination of smaller, multiple fire protection districts within municipalities. (*Belmont*, 111 Ill. 2d at 376, 381.) Section 14.14 requires that the district receiving the transfer of territory comprise an area of more than 80% of the municipality's assessed valuation. (70 ILCS 705/ 14.14(a)(2)(A) (West 1992).) Similarly, section 19a required that the district receiving the transfer of territory comprise an area of more than 70% of the municipality's territory. (Ill. Rev. Stat. 1985, ch. 127$^{1}/_{2}$, par. 38.2a(a)(4).) Lastly, section 14.14's countywide population classification of 500,000 to 750,000 persons limits its application only to municipalities in Lake County, whereas section 19a's countywide population classification of 600,000 to 1 million persons limited its application only to municipalities in Du Page County.

Given the overwhelming similarities, we find *Belmont* to be dispositive of the case at bar. Section 14.14 thus fails *Belmont*'s "two-prong test," as noted below. First, we cannot perceive of any rational difference of situation or condition that exists between a non-home-rule municipality served by more than one fire protection district in a county with a population of 500,000 to 750,000 persons—namely, Lake County—and those non-home-rule municipalities served by more than one fire protection district in other counties throughout the State. Second, there is no rational or proper basis for the population classification in view of the purposes to be accomplished by section 14.14. We are unable to conceive of any possible connection that exists between section 14.14's *countywide* population classification and the desirability of eliminating smaller fire protection districts within a given *municipality*. Moreover, we see no reason why section 14.14 cannot have general ap-

plicability. In conclusion, section 14.14 is arbitrary and must be struck down as an unconstitutional special or local law.

We are not persuaded by the Village's arguments to the contrary. The Village submits that *Belmont*'s "two-prong test" should not be applied here. According to the Village, *Belmont*'s "two-prong test" was overruled by three recent decisions in which this court utilized a more deferential "rational basis test." *Cutinello v. Whitley* (1994), 161 Ill. 2d 409; *Nevitt v. Langfelder* (1993), 157 Ill. 2d 116; *Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230.

The Village is mistaken. The rational basis test has not overruled the "two-prong test." We acknowledge that some confusion may have resulted when the *Belmont* court created the label "two-prong test" to describe how rational basis review is conducted in certain circumstances. We today emphasize that the so-called "two-prong test" is not a distinct test in and of itself. Rather, this test merely describes in greater detail how a court applies the rational basis test when determining whether a legislative classification based upon population or territorial differences is unconstitutional special legislation. See, *e.g.*, *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 368-69 (applying both tests); *Christen v. County of Winnebago* (1966), 34 Ill. 2d 617, 619 (discussing both tests without labeling either); see also *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 112; *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 578; *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 399; see generally *Grace v. Howlett* (1972), 51 Ill. 2d 478, 487 (explaining that although the equal protection clause and the special legislation clause "cover much of the same terrain, they are not duplicates"); G. Braden & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 209 (1969) (noting the distinction

between a general law tailored to a special local problem, which is permissible, and a purely local law enacted through the device of an artificial classification, which is forbidden).

We further note that the *Cutinello, Nevitt,* and *Bilyk decisions are distinguishable from Belmont* and the case *sub judice.* In *Cutinello,* this court found constitutional a statutory classification that allowed the counties of Du Page, Kane, and McHenry to impose a tax on individuals who sell motor fuel at retail. (*Cutinello,* 161 Ill. 2d 409.) Statistical evidence was presented showing that those three counties were the three fastest growing counties in the State in terms of percentage growth, which created a greater need for the building, maintenance, and repair of their highway systems. The court held that the legislature could have rationally concluded that a greater need for transportation financing existed in those three counties than in other areas of the State. The opinion cited *Belmont* as sound precedent (*Cutinello,* 161 Ill. 2d at 417), and its language indicated that the classification there satisfied the more detailed version of the rational basis test. First, the classification was founded upon a rational difference of situation, as the classification included within it only the three fastest growing counties in the State in terms of percentage growth. Nothing more was required because classifications need not be drawn with mathematical precision and they may address degrees of evil. (*Cutinello,* 161 Ill. 2d at 421-22.) Second, there was a rational and proper basis for the classification in view of the statute's purpose of providing fast-growing counties with a method to raise the financing needed to expand and maintain their burdened county highway systems.

In *Nevitt,* this court found constitutional an amendment to the Public Employee Disability Act, which exempted from the Act's application home rule units of

government having a population of more than 1 million persons. (*Nevitt,* 157 Ill. 2d at 120.) Only the City of Chicago and Cook County satisfied the exemption. The court upheld the statute, citing several reasons why the legislature could have rationally distinguished between the public employees of Chicago and Cook County and the public employees of other, smaller, home rule units of government. Thus, the classification there was based on a rational difference of situation and bore a relationship to the purposes of the Act.

In *Bilyk,* this court found constitutional a statute that immunized the Chicago Transit Authority from tort liability for failure to protect passengers from the criminal acts of third parties. (*Bilyk,* 125 Ill. 2d 230.) The court explained that the Chicago Transit Authority performed the unique governmental function of operating one of the largest mass transit systems in the United States and had its own peculiar problems, which qualified it for unique treatment by the legislature. (*Bilyk,* 125 Ill. 2d at 242-44.) Because the classification there was based upon function, not population or territorial differences, the more detailed version of the rational basis test did not apply.

*Cutinello, Nevitt,* and *Bilyk* are therefore unlike the present case. Here, as in *Belmont,* there is no relationship whatsoever between *county* population and the need for *municipalities* to consolidate fire protection districts. There also is no basis on which to distinguish Lake County from any other county for purposes of section 14.14.

As a final matter, the Village maintains that Vernon Fire failed to carry its burden of establishing that section 14.14 is unconstitutional. According to the Village, Vernon Fire failed to provide evidence that other municipalities in the State could benefit from this statute, but for the population classification.

We have carefully scrutinized Vernon Fire's exhibits and are persuaded that Vernon Fire has satisfied its burden. The exhibits introduced in this case go far beyond those presented in *Belmont*. The exhibits show that non-home-rule municipalities in Du Page County could potentially benefit from section 14.14, but for the population classification. Consequently, the arbitrariness of the statute's population classification has been established.

For the reasons stated above, we hold that section 14.14 violates the special legislation provision of the Illinois Constitution. The judgment of the appellate court, reversing the judgment of the circuit court, is therefore affirmed.

*Affirmed.*