In re PETITION FOR THE DETACHMENT OF LAND FROM THE MORRISON COMMUNITY HOSPITAL DISTRICT (Marvin Scott *et al.*, Petitioners-Appellees, v. Morrison Community Hospital District, Respondent-Appellant).

Third District   Nos. 3—00—0094, 3—00—0449 cons.

Opinion filed December 27, 2000.

M. Tod Melton (argued), of Ludens, Potter & Burch, of Morrison, for appellant.

James B. Eagle (argued), of Eagle & Eagle, of Rock Island, for appellees.

PRESIDING JUSTICE SLATER delivered the opinion of the court:
Petitioners filed a petition seeking detachment from respondent Morrison Community Hospital District pursuant to section 10 of the Hospital District Law (70 ILCS 910/10 (West Supp. 1999)). Respondent objected to the petition on various grounds. Following a hearing, the circuit court ruled that the petition was sufficient and it certified

the detachment proposition to the proper election officials. That decision was appealed to this court on February 4, 2000, under No. 3—00—0094. During the pendency of that appeal, a majority of the voters of the territory seeking detachment voted in favor of detachment, 712 to 51. Thereafter, petitioners filed a motion to declare the territory detached. Respondent objected to petitioners' motion on the same grounds that it had objected to the petition to detach. On May 5, 2000, the circuit court overruled respondent's objections and declared the territory detached. Respondent appealed from that order on June 5, 2000, under No. 3—00—0449. Subsequently, on respondent's motion, the two appeals were consolidated by this court.

## Facts

■ The Morrison Community Hospital District (the District) was established in 1952. The detached territory became part of the District in 1970 by means of annexation. The detached territory is located in Whiteside County and consists of a portion of Portland Township and all of Prophetstown Township, including the City of Prophetstown. The detached territory is not identical to the area annexed in 1970; it represents only a portion, or subset, of that area. The area annexed in 1970 constitutes more than 25% of the equalized assessed valuation of the District. The detached area contains less than 25% of that valuation. The basis for the detachment petition was an amendment to section 10 of the Hospital District Law which provides in part:

"[W]ithin 24 months after the effective date of this amendatory Act of the 91st General Assembly, the legal voters residing within a hospital district may file a petition for detachment from the hospital district where (i) the territory sought to be detached was added to the hospital district by way of annexation; and (ii) the equalized assessed valuation of the territory sought to be detached constitutes less than 25% of the equalized assessed valuation of the hospital district. The petition must be signed by not less than 5% of the legal voters of the territory sought to be detached. Detachment is not permissible if it would destroy the contiguity of the territory of the District. A hearing shall be held on the petition as nearly as possible as in the case of a formation petition. If upon the hearing, the court finds that the petition is sufficient, it shall certify the proposition to the proper election officials, who shall submit the question to the legal voters of the territory proposed to be detached at an election in accordance with the general election law." 70 ILCS 910/10 (West Supp. 1999) (as amended by Pub. Act 91—449, § 5, eff. August 6, 1999).

On appeal, respondent contends that the amendment to section 10 set forth above violates the equal protection clauses of the Illinois and

United States Constitutions, constitutes special or local legislation, and results in a denial of due process. Respondent also asserts that, even assuming the constitutionality of section 10, the territory sought to be detached in this case is ineligible to detach because it is not identical to the area that was annexed in 1970.

## Analysis

We first consider whether section 10, as amended, requires the detaching territory to be identical to the area that was added by way of annexation. The relevant provision states that a petition for detachment may be filed "where (i) the territory sought to be detached was added to the hospital district by way of annexation; and (ii) the equalized assessed valuation of the territory sought to be detached constitutes less than 25% of the equalized assessed valuation of the hospital district." 70 ILCS 910/10 (West Supp. 1999). Respondent maintains that "the territory" is ambiguous in that it may refer to the territory originally annexed or to some subset of that territory. We disagree.

■ Statutory language must be given its plain and ordinary meaning, and where that language is clear and unambiguous, a court must apply the statute without further aid of statutory construction. *People v. Robinson*, 172 Ill. 2d 452, 667 N.E.2d 1305 (1996). A court is not authorized to declare that the legislature did not mean what the plain language of the statute says. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 712 N.E.2d 298 (1998). The statutory language at issue here clearly requires that the detaching territory must have been added by annexation. There is no requirement that *all* previously annexed territory must be detached or that the detaching territory must be *identical* to the previously annexed territory. Where the language of a statute is clear and unambiguous, a court must give it effect as written, without reading in exceptions, limitations or conditions that the legislature did not express. *Davis v. Toshiba Machine Co.*, 186 Ill. 2d 181, 710 N.E.2d 399 (1999).

■ Respondent argues, however, that interpreting the statute as it is written could lead to absurd results. Respondent posits the existence of a hypothetical "freeloading large landowner" who could file a petition for detachment and receive his own personal election ballot, thereby assuring detachment. Respondent also points out that successive petitions for detachment could be filed by various subsets of the originally annexed territory, resulting in detachment of territory constituting more than 25% of the equalized assessed valuation of the hospital district.

While it is true that it is presumed that the legislature did not intend an absurdity or injustice (*Henrich*, 186 Ill. 2d 381, 712 N.E.2d

298), we see no absurdity in permitting a single landowner to detach. Whether one person owns 100 acres or 100 people own one acre each, detachment has the same effect on the hospital district's tax revenue. Moreover, the procedure outlined in section 10 for *annexation* to a hospital district would appear to allow a single landowner to annex. We see no reason why allowing the same landowner to detach would be "absurd."

With respect to respondent's argument that the filing of successive or multiple petitions could result in the detachment of territory comprising more than 25% of the assessed valuation of the District, we acknowledge such a possibility. However, the 25% limitation appears to have been intended to prevent destablization of the District's tax base by prohibiting a large area from detaching at *one time*. Therefore, multiple petitions which total more than 25% and which are decided in the same election would presumably be prohibited. On the other hand, successive petitions would not exceed the 25% limit merely because, when combined, they total more than 25% of the assessed valuation. Alternatively, it is possible that the 25% limitation was meant as an absolute cap, thereby prohibiting detachment of property constituting more than 25% of assessed valuation in the aggregate, regardless of the number or timing of the petitions.

While these questions concerning the effect of the 25% limitation on multiple or successive petitions are interesting, they are not at issue in this case. This court's role is to decide actual controversies, not hypothetical ones. The detaching territory in this case constituted less than 25% of the assessed valuation of the District. Despite respondent's claim that petitioners *intend* to file a petition to detach the remaining portion of the originally annexed territory in the future, the issues before this court are limited to the single petition contained in the record. See *Winfield Fire Protection District v. City of Wheaton*, 29 Ill. App. 3d 630, 332 N.E.2d 43 (1975) (court must consider existing facts and may not speculate as to effect of future detachments). We will not ignore the plain language of a statute based on conjecture, nor will we "depart from a statute's plain meaning so long as application of the statute's plain language *to the circumstances presently before the court* would not effect an absurd or unjust result." (Emphasis added.) *People ex rel. Ryan v. McFalls*, 313 Ill. App. 3d 223, 228, 728 N.E.2d 1152, 1155 (2000). Accordingly, we find that the territory detached in this case was eligible for detachment under section 10 notwithstanding that it was not identical to the area annexed in 1970.

We now consider the various constitutional challenges raised by respondent concerning section 10. Respondent asserts that the amendment to section 10 relied on for detachment in this case violates the

equal protection clauses of the Illinois and United States Constitutions because only previously annexed territories are allowed to detach and because detachment must occur within a 24-month window of opportunity. Respondent also contends that the amendment constitutes special or local legislation. Finally, respondent maintains that the amendment to section 10 violates due process.

## Equal Protection

■ ■ The equal protection clauses of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) and the Constitution of the United States (U.S. Const., amend. XIV) prohibit arbitrary and invidious discrimination that results from withholding a right, benefit or privilege from a person or class of persons without a reasonable basis. See *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 483 N.E.2d 1245 (1985). The equal protection clauses do not prohibit all classifications, only those that are arbitrary. See *In re Petition of the Village of Vernon Hills*, 168 Ill. 2d 117, 658 N.E.2d 365 (1995). The legislature has broad discretion in drawing statutory classifications, and those classifications are presumed to be valid. *Bilyk v. Chicago Transit Authority*, 125 Ill. 2d 230, 531 N.E.2d 1 (1988). "A legislative classification will be upheld if any set of facts can be reasonably conceived which justify distinguishing the class to which the law applies from the class to which the statute is inapplicable." *Bilyk*, 125 Ill. 2d at 236, 531 N.E.2d at 3. It is not required that a classification be accurate, logical, harmonious or scientific, as long as it is not arbitrary and will accomplish the legislative purpose. *People ex rel. Curren v. Wood*, 391 Ill. 237, 62 N.E.2d 809 (1945); *City of Geneva v. Du Page Airport Authority*, 193 Ill. App. 3d 613, 550 N.E.2d 261 (1990). The party attacking the validity of a classification bears the burden of establishing its arbitrariness. *Vernon Hills*, 168 Ill. 2d 117, 658 N.E.2d 365. The same analysis is used in assessing equal protection claims under both the United States and Illinois Constitutions. *People v. Reed*, 148 Ill. 2d 1, 591 N.E.2d 455 (1992); see also *Nevitt v. Langfelder*, 157 Ill. 2d 116, 623 N.E.2d 281 (1993) (federal and state equal protection guarantees are determined by same standards). ·

■ Respondent maintains that there is no rational basis for distinguishing property which has been added by way of annexation from property which was part of the original hospital district. We disagree. An examination of the Hospital District Law reveals that substantial differences exist between territory comprising the "original" district and territory added by annexation. Creation of a hospital district requires a minimum of 25,000 inhabitants, unless the district includes at least one entire county or six contiguous townships, in

which case only 10,000 inhabitants are required. 70 ILCS 910/5 (West 1998). This requirement presumably reflects a legislative determination that a certain "critical mass" is necessary to justify the formation of a hospital district. In addition to establishing the *need* for a hospital district, the population requirements may also assure a sufficient tax base to establish and support hospital facilities. These same concerns provide ample justification for distinguishing previously annexed territory from the "core" district for purposes of detachment. Annexed territory represents an *addition* to the core district, which is not vital to its continuation. Allowing detachment of all or part of the original territory, on the other hand, could destabilize the district.

In addition to the need for maintaining a stable core population to support the hospital district, another factor supports the distinction between the original district and previously annexed property. The apparent purpose of the amendment to section 10 was to allow property owners who had joined the district by annexation to change their minds. Prior to the amendment, once territory was annexed it remained part of the district; there was no mechanism for detachment. Thus, property owners who were or became dissatisfied with the services provided by the district had no recourse. By contrast, voters within a municipality or township that was part of the original district could petition for detachment within 60 days after the district was established. 70 ILCS 910/10 (West Supp. 1999). Thus the distinction between the original district and the annexed territories was warranted by the fact that the owners of annexed property had never been given the opportunity to detach that was given to owners of property in the original district. Accordingly, we find that the distinction between previously annexed property and property that was part of the original hospital district is not arbitrary and does not violate the equal protection clauses of the United States or Illinois Constitution.

### Special Legislation

Respondent also contends that the limited 24-month time period of the amendment to section 10 demonstrates that it is special or local legislation, and also results in a denial of equal protection. We disagree.

■ The special legislation provision of the Illinois Constitution prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or group of persons to the exclusion of others similarly situated. *Vernon Hills*, 168 Ill. 2d 117, 658 N.E.2d 365. A special legislation challenge is generally judged by the same standard that is applied to review of an equal protection challenge.

*Vernon Hills*, 168 Ill. 2d 117, 658 N.E.2d 365; *Nevitt*, 157 Ill. 2d 116, 623 N.E.2d 281. Thus, "[w]hether a law is challenged as special legislation or as violative of equal protection, the controlling question is the same: Is the statutory classification rationally related to a legitimate State interest?" *Bilyk*, 125 Ill. 2d at 236, 531 N.E.2d at 3; see also *Nevitt*, 157 Ill. 2d 116, 623 N.E.2d 281.

■ Respondent argues that the distinction that the amendment to section 10 draws between those who are ready to exercise their detachment rights within 24 months and those who may want to exercise a detachment right sometime in the future is arbitrary. We disagree. The 24-month limitation on filing for detachment is no more (or less) arbitrary than a 1-year statute of limitations for slander (735 ILCS 5/13—201 (West 1998)), a 2-year limitation for personal injury (735 ILCS 5/13—202 (West 1998)) or a 10-year limitation for actions on a written contract (735 ILCS 5/13—206 (West 1998)). We are aware of no principle of law prohibiting the legislature from granting a privilege for a limited period of time or from incorporating an "expiration date" into an amendment. On the contrary, the Regulatory Sunset Act (5 ILCS 80/1 *et seq.* (West 1998)) provides for the automatic repeal of various laws unless they are continued by the legislature.

*Devine v. Board of Commissioners*, 84 Ill. 590 (1877), relied on by respondent for the proposition that a "window of opportunity" constitutes special legislation, is inapposite. In *Devine* the supreme court invalidated as special legislation a law, apparently enacted in response to the great Chicago fire, which was limited to counties containing over 100,000 inhabitants. Only Cook County contained such a population, and the court noted that no other county could be expected to reach that figure within the six-year period the law was to be in effect. "No express words that could have been used by the General Assembly, could limit the operation of this law to the county of Cook more absolutely and definitely, than those employed." *Devine*, 84 Ill. at 592. Unlike *Devine*, in this case the 24-month duration of the amendment does not limit its applicability to only one county. While respondent argues that the possibility of citizens in another hospital district organizing within 24 months is "incredibly slim," it acknowledges that it is "certainly theoretically possible." We agree with the latter assessment. The 24-month duration of the amendment does not, in our opinion, render it objectionable as special legislation, nor does it result in a denial of equal protection.

## Due Process

■ Finally, respondent maintains that it is a denial of due process to allow the detaching portion of the District to shift its tax burden to

the remaining portion of the District without allowing the citizens in the nondetaching portion of the District to vote. Respondent argues that it has expended millions of dollars in providing medical services to the Prophetstown area and that 7 out of 10 residents of the Prophetstown area take advantage of the benefits of the hospital District. Citing *People ex rel. Harris v. Parrish Oil Production, Inc.*, 249 Ill. App. 3d 664, 622 N.E.2d 810 (1993), respondent asserts that government action which allows one portion of the community to shift the tax burden to the other portion of the community without the opportunity to vote or the right to be heard violates due process.

In *Parrish Oil* the court found that a regulation of the Illinois Department of Revenue that required the entire tax levied against the working interest in an oil or gas leasehold to be billed to the *operators* of the interest rather than the individual *owners* of the interest violated due process. The court found that the owners' interests were not subject to sale for failure to pay delinquent taxes because they had not received individual notices of the taxes due. "Because owners do not receive tax bills, they cannot review the taxes assessed and cannot challenge the validity of the taxes assessed." *Parrish Oil*, 249 Ill. App. 3d at 669, 622 N.E.2d at 815. Clearly, *Parrish Oil* provides no support for respondent's claim that persons in the nondetaching part of the District were denied due process because they were not allowed to vote on detachment.

We are aware of no authority, and respondent provides none, for the proposition that due process mandates that all persons in a hospital district, or any other municipal corporation, are entitled to vote on whether a portion of the district should be detached. On the contrary, our supreme court stated long ago, in upholding a statute allowing disconnection from a municipality by petition:

> "The practical effect of the disconnection of the petitioner's premises if the village continues its expenditures upon the same financial scale that it has in the past will be to increase taxes on the taxable property remaining within the village, but no tax-payer has any vested right in the village as a municipal corporation or any guaranty that its boundaries will remain unchanged or that it may not lose its corporate life. [Citation.] Those hazards are incident to the ownership of property within a city or village." *Punke v. Village of Elliot*, 364 Ill. 604, 609, 5 N.E.2d 389, 392 (1936).

Two years later, in again considering the constitutionality of the same statute, the court noted: "There is, and has long been, a rule in this State, that the legislature not only has authority to determine the territory and boundaries of various municipal corporations, but also to

change or alter them by annexing or disconnecting territory, either with or without consent of the corporate authorities." *Geweke v. Village of Niles*, 368 Ill. 463, 467, 14 N.E.2d 482, 484 (1938). Subsequently in *Bergis v. Village of Sunnyside*, 13 Ill. 2d 50, 53, 147 N.E.2d 333, 335 (1958), the supreme court reiterated the principle that no taxpayer has a guaranty that a municipal corporation's boundaries will not change and "[t]he taxation of owners of property remaining within the municipality does not deny due process."

Based on these authorities, we find that the fact that taxpayers in the nondetaching portion of the District were not allowed to vote on detachment does not violate due process. As succinctly stated by the court in *People ex rel. Royal v. Cain*, 410 Ill. 39, 48, 101 N.E. 2d 74, 79 (1951), in upholding the constitutionality of the unamended version of the Hospital District Law, "there is no such thing as a property right vested in the citizens of the State against the imposition of taxes for the public good."

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

BRESLIN and HOLDRIDGE, JJ., concur.