(No. 91563

*In re* ESTATE OF WILLIE JOLLIFF, Deceased (Edith Porter, Appellant, v. Cheryl Jolliff, Appellee).

*Opinion filed May 23, 2002.*

David A. Martin, Sandra L. Hebenstreit and Kathleen M. Gros, of Righeimer, Martin & Cinquino, P.C., of Chicago, for appellant.

Alan R. Borlack and Eric G. Grossman, of Bailey, Bor-
lack, Nadelhoffer & Carroll, of Chicago, for appellee.

JUSTICE FITZGERALD delivered the opinion of the
court:

Edith Porter appeals the Cook County circuit court's
order holding section 18—1.1 of the Probate Act of 1975
(755 ILCS 5/18—1.1 (West 2000)) unconstitutional and
dismissing her statutory custodial claim under that sec-
tion. We reverse and remand.

## BACKGROUND

In 1970, Willie Jolliff and his wife, Dorothy, separated,
but subsequently never divorced. On March 28, 1977,
Willie was completely disabled after suffering a brain
stem injury in a motor vehicle accident. Three months
later, Porter, Willie's sister, was appointed conservator of
his person and estate. Willie resided in either a hospital
or a skilled-care facility for nearly 10 years until Porter
brought him into her home in 1987, where he stayed for
more than 12 years. Willie died intestate on August 30,
1999. Between 1977 and 1999, Porter collected $275,880
in conservator fees and $70,925 in helper fees from Wil-
lie's guardianship estate.

After Willie's death, Dorothy filed a petition for let-
ters of administration. Cheryl Jolliff, one of Willie and
Dorothy's daughters, was appointed independent admin-
istrator of Willie's estate. On July 13, 2000, Porter filed a
$200,000 statutory custodial claim under section 18—1.1.
Porter's claim stated:

> "Edith Porter, Sister of the deceased, was the plenary
> Guardian of the Person and Guardian of the Estate for
> Willie Jolliff, deceased, from the period 1977 though August
> 30, 1999, the decedent's date of death. During the period
> 1987 up to and including August 30, 1999, Edith Porter
> was the primary caretaker and personally cared for her
> brother, Willie Jolliff, who was adjudicated a disabled
> person in the Circuit Court of Cook County in 1977. From

the period 1987 until the date of death in 1999, Willie Jolliff resided full time with Edith Porter at her home. The nature of Willie Jolliff's disabilities were extensive and included the following: 100% physically disabled and 100% mentally disabled due to a brain stem injury; he was unable to perform activities of daily living independently such as bathing, grooming, dressing, meal preparation and laundry; Mr. Jolliff was unable to transfer himself from one body position to another without assistance; he required full time assistance to attend any out of the home function and/or activity.

Edith Porter, now age 68, assumed full-time care of her brother, Willie Jolliff since 1987. During the period 1977-1987, while Willie Jolliff was a full-time resident of a skilled care facility, Edith Porter, as plenary guardian, was very involved in the care, supervision and daily care plan of Willie Jolliff."

Cheryl filed a motion to dismiss Porter's claim, arguing that section 18—1.1 violated various constitutional provisions. The trial court agreed with Cheryl. The court held that section 18—1.1 violated both the special legislation clause and the equal protection clause of the State constitution. Quoting an opinion by another trial court judge, the court stated:

" 'In this case the statute creates a gift for only certain persons who provide care for the ward to the exclusion of all others who could have provided the same care. The determination that only the spouse, parent, brother, sister or child of the ward may receive this gift excludes all others who may be similarly situated. A doting niece, nephew, grandchild or friend who otherwise meets the requirements of Section 18—1.1 is denied the gift it bestows. The classifications in the statute create a situation for gifts for only certain persons, to the exclusions of others, and therefore is a denial of equal protection.

\*\*\*

This court is unable to determine why only certain relatives were selected to receive the gifts by means of claims as stated in the statute. Moreover, Section [18—1], the general law, should be applied in this instance. Section

[18—1] of the Probate Act clearly provides that a claim may be filed against the estate of the disabled person or a decedent for the care of a disabled person.' "

The court also held that section 18—1.1 violates the due process clause of the state constitution because it creates an irrebuttable presumption that one of the beneficiaries named in the statute, who lives with and cares for a disabled person for three years, has suffered a minimum amount of damages. Again, quoting the same trial judge, the court stated:

" 'Such a presumption violates due process in that it is arbitrary and unreasonable and denies heirs and legatees their property without due process of law. *** The state may have a legitimate purpose in compensating a person who provides nursing and other care for a disabled person, but it does not have an interest in providing a "gift" to such a person in addition to the compensation received for such care. The statute does not set forth any requirement as to the proof necessary to show the extent of care provided. Neither does it provide any facts or standards to determine the percentage of disability in order to determine the minimum award.' "

According to the court, the statute also was arbitrary because the legislature failed to articulate a reason why the minimum amounts were chosen.

Finally, the court held that section 18—1.1 violates the separation of powers provision of the state constitution because it requires a court to award a statutory minimum amount without any discretion to award a lesser amount. According to the court, the legislature unconstitutionally encroached upon the power of the judiciary to decide cases. The trial court dismissed Porter's claim, and she appealed directly to this court. See 134 Ill. 2d R. 302(a)(1).

## ANALYSIS

Section 18—1.1 provides:

"Any spouse, parent, brother, sister, or child of a disabled person who dedicates himself or herself to the care of

the disabled person by living with and personally caring for the disabled person for at least 3 years shall be entitled to a claim against the estate upon the death of the disabled person. The claim shall take into consideration the claimant's lost employment opportunities, lost lifestyle opportunities, and emotional distress experienced as a result of personally caring for the disabled person. The claim shall be in addition to any other claim, including without limitation a reasonable claim for nursing and other care. The claim shall be based upon the nature and extent of the person's disability and, at a minimum but subject to the extent of the assets available, shall be in the amounts set forth below:

    1. 100% disability, $100,000

    2. 75% disability, $75,000

    3. 50% disability, $50,000

    4. 25% disability, $25,000[.]''

755 ILCS 5/18—1.1 (West 2000).[1]

Under section 18—1.1 a claimant must meet two requirements: (1) the claimant must be an immediate family member—a spouse, parent, sibling, or child—of a disabled person; and (2) the claimant must have dedicated himself or herself to the disabled person for at least three years. The legislature referred to "living with and

---

[1]Public Act 85—1417, which created section 18—1.1, also created section 11a—18.1 of the Probate Act. Section 11a—18.1 provides that the trial court may authorize the guardian of a disabled person's estate to make conditional gifts from the estate to "any spouse, parent, brother or sister of the disabled person who dedicates himself or herself to the care of the disabled person by living with and personally caring for the disabled person for at least three years." 755 ILCS 5/11a—18.1(a) (West 2000). This statute does not set a minimum amount for such gifts.

Additionally, Public Act 85—1417 amended section 18—1 and 18—10 of the Probate Act. Section 18—1(a) now provides that statutory custodial claims under section 18—1.1 are claims against a decedent's estate which may be filed with the estate representative or the trial court. See 755 ILCS 5/18—1(a) (West 2000). Section 18—10 now provides that statutory custodial claims are first priority claims. See 755 ILCS 5/18—10 (West 2000).

personally caring for" a disabled person in describing the term "dedicate," but that term encompasses more than care. See Webster's Third New International Dictionary 589 (1993) ("dedicate" means "to commit to something as a constant goal or way of life"). Section 18—1.1 laudably recognizes the often unseen and intangible sacrifices made, and opportunities forgone, by immediate family members who commit their lives every day to making the lives of disabled persons better.

All statutes enjoy a strong presumption of constitutionality, and the party challenging a statute bears the burden of clearly rebutting this presumption. *Miller v. Rosenberg*, 196 Ill. 2d 50, 57-58 (2001). A court will affirm a statute's constitutionality if the statute is reasonably capable of such an interpretation. See *Miller*, 196 Ill. 2d at 58; *Delany v. Badame*, 49 Ill. 2d 168, 171 (1971) (this court will resolve all reasonable doubts in favor of a statute's validity). The constitutionality of a statute is a question of law, and our review is *de novo. Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 31 (2001).

In this appeal both Porter and Cheryl repeat the arguments that they made before the trial court. We address these arguments in turn.

### Special Legislation/Equal Protection

Porter asserts that the trial court erred in holding that section 18—1.1 violates the special legislation clause and the equal protection clause of the Illinois Constitution. The special legislation clause of our state constitution provides: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13. The equal protection clause provides: "No person shall *** be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2.

In defense of the trial court's holding, Cheryl initially

contends that section 18—1.1 is special legislation because a general law, section 18—1(a) of the Probate Act, already allows anyone to bring nursing care claims against a disabled person's estate. Section 18—1(a) provides for the filing of claims against an estate. See 755 ILCS 5/18—1(a) (West 2000) ("A claim against the estate of a decedent or ward, whether based on contract, tort, statutory custodial claim or otherwise, may be filed with the representative or the court or both"). Section 18—1(a), however, is not a general law as we have used that term. See *County of Bureau v. Thompson*, 139 Ill. 2d 323, 345 (1990) ("A general law is a law that by its terms applies to all who are in a like position, who are 'similarly situated' "); *Bridgewater v. Hotz*, 51 Ill. 2d 103, 111 (1972). Section 18—1(a) describes which claims may be filed against an estate and with whom to file them; unlike section 18—1.1, section 18—1(a) does not create a new claim. The General Assembly understood this when it amended section 18—1(a) to include section 18—1.1 statutory custodial claims among the types of claims which may be filed with the estate representative or the trial court.

Additionally, as we have noted, section 18—1.1 concerns something apart from nursing or other care. The General Assembly knew that section 18—1(a) already was an available avenue to recoup such expenses. The legislature enacted section 18—1.1 to allow immediate family members to recover the additional opportunity and emotional costs of committing their lives to disabled relatives. Section 18—1(a) is not a general law in relation to section 18—1.1.

This conclusion, however, does not end our constitutional inquiry. Cheryl further contends that section 18—1.1 violates the special legislation and equal protection clauses because it makes an irrational classification. According to Cheryl, section 18—1.1 includes only members

of a disabled person's immediate family within the class that may make statutory custodial claims, while it excludes persons outside a disabled person's immediate family—grandparents or grandchildren, nieces, nephews, aunts, uncles, cousins, and even friends—who have provided identical care to a disabled person.

The special legislation clause expressly prohibits the General Assembly from conferring a benefit or privilege upon one group while excluding other similarly situated groups. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 391 (1997). The legislature enjoys broad discretion in making statutory classifications, and the special legislation clause does not prohibit all classifications, only arbitrary ones. *In re Petition of the Village of Vernon Hills*, 168 Ill. 2d 117, 122 (1995); *Illinois Polygraph Society v. Pellicano*, 83 Ill. 2d 130, 138 (1980) (special legislation "preferentially and arbitrarily" applies to a class while it excludes all others). That is, the purpose of this clause is to prevent legislative classifications which discriminate in favor of a select group without a sound and reasonable basis. *Best*, 179 Ill. 2d at 391; *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 367 (1985). Accordingly, the special legislation clause supplements the equal protection clause, which prohibits arbitrary discrimination against a person or class. *Bilyk v. Chicago Transit Authority*, 125 Ill. 2d 230, 236 (1988); Ill. Ann. Stat., 1970 Const., art. IV, § 13, Constitutional Commentary, at 217 (Smith-Hurd 1993) ("In many cases, the protection provided by [the special legislation clause] is also provided by the equal protection clause").

Our inquiry here is twofold. We first must determine whether the statute discriminates in favor of a select group. If so, we must determine whether the classification created by the statute is arbitrary. See *Phillips v. Browne*, 270 Ill. 450, 453 (1915) ("That the statute operates uniformly upon all members of a class created as the

beneficiaries of the act is not the sole test to be applied, but in order to avoid the constitutional inhibition *** it must also appear that there is a sound basis, in reason and principle, for regarding the class of individuals as a distinct and separate class for the purpose of the particular legislation"). In this regard, special legislation and equal protection challenges are judged by the same standard. See *Cutinello v. Whitley*, 161 Ill. 2d 409, 417 (1994); *Illinois Housing Development Authority v. Van Meter*, 82 Ill. 2d 116, 124 (1980); *Anderson v. Wagner*, 79 Ill. 2d 295, 315 (1979). Because section 18—1.1 does not affect fundamental rights or make a suspect classification, the appropriate measure of its constitutionality is the deferential rational basis test, which asks whether the statutory classification is rationally related to a legitimate government interest. See *Best*, 179 Ill. 2d at 394; *Bilyk*, 125 Ill. 2d at 236; see also *Thompson*, 139 Ill. 2d at 337. The legislature has great flexibility in making statutory classifications as dictated by common experience, and our constitution does not mandate " ' "abstract symmetry." ' " See *People ex rel. Carey v. Chrastka*, 83 Ill. 2d 67, 81 (1980), quoting *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 539-40, 86 L. Ed. 1655, 1659, 62 S. Ct. 1110, 1112 (1942), quoting *Patsone v. Pennsylvania*, 232 U.S. 138, 144, 58 L. Ed. 539, 543, 34 S. Ct. 281, 282 (1914). Accordingly, if a court can reasonably conceive of circumstances which justify distinguishing the class benefitted by the statute from the class outside its scope, the classification is constitutional. *Vernon Hills*, 168 Ill. 2d at 122; see *Cutinello*, 161 Ill. 2d at 420 (the rational basis test requires only a reasonable relationship between the challenged legislation and a conceivable, even though unarticulated, governmental interest).

Here, section 18—1.1 discriminates in favor of a select group. It provides that only "certain classes of caregivers"—spouse, parent, sibling, and child—are

entitled to make statutory custodial claims. *Gebis*, 186 Ill. 2d at 195. Other classes of caregivers are excluded. Thus, in order to pass constitutional muster, the classification in section 18—1.1 must share a rational relation with the problem targeted by the General Assembly.

In 1988, after the Illinois House of Representatives had approved House Bill 4116, the Senate judiciary committee proposed several amendments. Both houses appointed conference committees, and both houses adopted the joint conference committee report, which included section 4 containing the statutory custodial claim provision of section 18—1.1. See 1988 Ill. S.J. 3833-36; 1988 Ill. H.J. 5413-16. Governor Thompson disapproved. In an amendatory veto message, he wrote:

"Section 4 of this legislation attempts to address the difficulty a family member faces in seeking fair compensation for personal custodial care services rendered to a disabled person. While I understand monetary, as well as emotional hardships endured by the family of disabled person are often extreme, Section 4 of this bill is inequitable and unworkable, and will lead to complex probate litigation.

Section 4 of this bill contains serious inconsistencies and ambiguities. 'Disabled person' is a crucial category, as well as 'degrees of disability'; however, no definition is given for either in the text of the bill. Moreover, the category of persons who are entitled to conditional gifts is unfairly restricted, and the custodial claimant is given 1st class creditor status—superior to those of all beneficiaries under the disabled person's will. Further, it denies the State reimbursement for care given the disabled person until after all the statutory custodial care claims have been paid. Finally, the quality of care given is never addressed, nor is there any distinction, or increased claim provisions made, between a person who provides 3 years of care and one who provides 30 years of care.

I believe Section 4 of this bill is inequitable, unworkable, and will no doubt cause havoc with the handling of probate estates. Moreover, I cannot in good faith support and approve legislation which might put disabled persons

in the role of 'pawn' being tossed to and fro in a battle between persons eager to grant and claim a 'conditional gift' upon the disabled person's death." 1988 Ill. S.J. 5896-97 (Governor Thompson's amendatory veto message); 1988 Ill. H.J. 7524-25 (same).

Both houses of the General Assembly voted overwhelmingly to pass House Bill 4116 with section 4, notwithstanding the Governor's suggestions. 85th Ill. Gen. Assem., 1988 Sess., Final Legislative Synopsis & Digest 1934. The legislature was mindful of the class of persons who usually live with and personally care for disabled persons. See 85th Ill. Gen. Assem., Senate Proceedings, December 1, 1988, at 54-56, 58 (statements of Senator Poshard); 85th Ill. Gen. Assem., Senate Proceedings, December 1, 1988, at 58 (statements of Senator Geo-Karis); 85th Ill. Gen. Assem., House Proceedings, November 16, 1988, at 19 (statements of Representative Tate). The legislature also undoubtedly was mindful of other provisions of the Probate Act. *State v. Mikusch*, 138 Ill. 2d 242, 247-48 (1990) ("It is presumed that the legislature, in enacting various statutes, acts rationally and with full knowledge of all previous enactments"). Section 2—1 of the Probate Act provides rules of intestate descent and distribution. Under section 2—1, an intestate decedent's estate is distributed first to the decedent's surviving spouse and the decedent's descendants. 755 ILCS 5/2—1(a) through (c) (West 2000). If the decedent has no surviving spouse or descendants, then the estate is distributed to the decedent's parents, siblings, and siblings' descendants. See 755 ILCS 5/2—1(d) (West 2000). Section 18—1.1 refers to these same family members: spouse, parent, sibling, and child. Those with the highest intestate priority are those who are entitled to make statutory custodial claims.

Cheryl contends that the classification in section 18—1.1 is based upon the claimant's status as an immediate family member, not the claimant's activity in caring for

the disabled person. We have previously acknowledged "a particularly strong presumption that legislation which classifies on the basis of activities does so on the basis of legitimate differences as to the problem involved or the degree of harm applicable to the activity in question." *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill. 2d 252, 262 (1986); see *Skinner v. Anderson*, 38 Ill. 2d 455, 460 (1967); *Harvey v. Clyde Park District*, 32 Ill. 2d 60, 67 (1964) (classifications based on function are constitutionally permissible). This strong presumption in favor of activity-based classifications, however, does not mean that status-based classifications are never constitutionally permissible. A status-based classification which is rationally related to the purpose of the statute does not violate the special legislation or equal protection clauses.

Here, the classification bears a rational relationship to the purpose of the statute. Section 18—1.1 allows only immediate family members to make statutory custodial claims; this restriction clearly serves the legislative goal of encouraging immediate family members to commit themselves to disabled relatives. As Porter aptly notes in her reply brief, "the unique and abiding nature of these family ties will best insure the provision of quality home care on a sustained and continuing basis." Expanding the group who may make statutory custodial claims actually would exacerbate one of the problems identified by Governor Thompson. A wider pool of potential claimants would mean more jockeying to receive the statutory distribution. The class of persons most likely to provide dedicated residential and personal care with a loving and altruistic motive is the class identified in the statute.

Section 18—1.1 does not violate the special legislation clause or the equal protection clause of the Illinois Constitution.

## Due Process

Porter asserts that the trial court erred in holding

that section 18—1.1 violates the due process clause of the Illinois Constitution. The due process clause provides: "No person shall be deprived of life, liberty or property without due process of law ***." Ill. Const. 1970, art. I, § 2.

Porter initially argues that Cheryl and Willie's other heirs do not have vested property rights in his estate, but only mere expectancies unprotected by due process, because the legislature controls inheritance law. See, *e.g.*, *In re Estate of Webster*, 214 Ill. App. 3d 1014, 1022 (1991) (a legacy under a will is not a vested property right protected by due process). Here, the heirs' expectancies ripened into vested, and constitutionally protected, property rights when Willie died. See 11A Ill. L. & Prac. *Constitutional Law* § 232 (1981) ("at the moment of the death of a person the rights of his heirs *** to succeed to his estate are fixed and vested beyond the power of the General Assembly to change"). Additionally, though the legislature has plenary power to regulate the descent of property, this power is limited: "its exercise shall not violate any provision of the constitution." *Jahnke v. Selle*, 368 Ill. 268, 271 (1938). We proceed to the merits of this issue.

Section 18—1.1 does not affect fundamental rights, and the proper measure of constitutionality under the due process clause is, again, the deferential rational basis test. *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 446 (1998). Our only inquiry is whether the statutory means are rationally related to a legitimate government interest. See *Messenger v. Edgar*, 157 Ill. 2d 162, 176 (1993); *People v. Lindner*, 127 Ill. 2d 174, 180 (1989).

Cheryl contends that section 18—1.1 violates the due process clause for several reasons. First, argues Cheryl, section 18—1.1's minimum claim amounts are arbitrary because these amounts are unrelated to the value of the care the immediate family member making a statutory

custodial claim has given to the disabled person and unrelated to any compensation the immediate family member already may have received for such care. Cheryl labels these amounts as "irrebuttable presumptions" that immediate family members have suffered a statutorily specified amount of damages. See *First National Bank of Chicago v. King*, 263 Ill. App. 3d 813, 827 (1994).

Here, the minimum claim amounts bear a rational relationship to the purpose of the statute. Section 18—1.1 sets these amounts at modest levels, subject to the available assets in the disabled person's estate. An immediate family member who provided dedicated residential and personal care to the disabled person for just three years would receive, at a minimum, slightly more than $33,000 for each year he or she dedicated to the disabled person. In Willie's case, Porter dedicated more than 12 years of her life to her brother. She bathed him, groomed him, dressed him, and moved him; she prepared his meals and washed his clothes. Porter now asks for $200,000—less than $16,000 for each year she lived with and personally cared for Willie.

To borrow a phrase from Senator Poshard, one of the sponsors of section 18—1.1, it is "simply not fair or right" that Cheryl and Willie's other heirs who, from the record before us, never provided one day of care for Willie in the 22 years between his accident and his death could recover more from his estate than Porter, who voluntarily dedicated more than 12 years of her life to her brother. 85th Ill. Gen. Assem., Senate Proceedings, December 1, 1988, at 54. Such a result would be truly arbitrary. Given what section 18—1.1 claims require—at least three years of dedicated residential and personal care—and what they compensate—the lost opportunities and emotional hardships that necessarily accompany such dedication—we cannot conclude that the minimum claim amounts are unconstitutional. As this case demon-

strates, the statutory amounts are a reasonable lower limit for such a commitment and, like the statutory classification, serve the legislative goal of encouraging immediate family members to commit themselves to disabled relatives. Additionally, because a section 18—1.1 claim does not compensate nursing care, it would supplement any guardianship fees that Porter received for Willie's maintenance. See 755 ILCS 5/11a—18(a) (West 2000).

Second, Cheryl argues, section 18—1.1 is unconstitutionally vague because the statute does not provide any criteria as to what extent of care is required to make a statutory custodial claim or how to determine the percentage of disability. See *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 402 (1987). We acknowledge that section 18—1.1 is not a model of clarity in legislative drafting. See *In re Estate of Rollins*, 269 Ill. App. 3d 261, 273 (1995) (recognizing that section 18—1.1 "is not as clear as it could be"). Section 18—1.1, however, is not so vague that it cannot be applied. As we have noted, a section 18—1.1 claimant must meet two requirements: the claimant must be an immediate family member and must have dedicated himself or herself to the care of the disabled person by living with and personally caring for the disabled person for three years. See 755 ILCS 5/18—1.1 (West 2000); see generally *In re Estate of Hoehn*, 234 Ill. App. 3d 627 (1992) (construing the requirements of section 18—1.1). Upon meeting these requirements, the family member receives the minimum claim amount which corresponds to the disabled person's percentage of disability. Whether the family member has met these requirements and the percentage of disability are fact questions for the jury. See 755 ILCS 5/18—6 (West 2000) (any interested person may demand a jury trial on a claim against an estate). Of course, we decide only that the statutory requirements and percentages do not violate due process, not that Por-

ter has satisfied the statute and, consequently, may recover.

Cheryl raises the possibility that more than one immediate family member could file a claim under section 18—1.1. We agree that section 18—1.1 could allow more than one immediate family member to make a statutory custodial claim; we do not believe that this makes the statute unconstitutional. The legislature chose to encourage private residential care by rewarding any immediate family member who lives with and cares for a disabled person for three years. Though we believe that this circumstance would rarely arise, more than one immediate family member may make a statutory custodial claim if more than one meets the requirements of section 18—1.1.

Section 18—1.1 does not violate the due process clause of the Illinois Constitution.

### Separation of Powers

Porter finally asserts that the trial court erred in holding that section 18—1.1 does not violate the separation of powers provision of the Illinois Constitution. The separation of powers provision of our constitution states: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1.

In defense of the trial court's holding, Cheryl contends that the legislature encroached upon the powers of the judiciary by setting minimum claim amounts. These amounts, Cheryl argues, disregard the jury's deliberative process in determining damages, as well the trial court's authority to reduce excessive damage awards. Cheryl relies upon *Best*, where we held that a cap on noneconomic compensatory damages in tort cases violated the separation of powers provision. See *Best*, 179 Ill. 2d at 414. In *Best*, we reasoned that the damage cap "unduly encroache[d] upon the fundamentally judicial prerogative

of determining whether a jury's assessment of damages is excessive within the meaning of the law." *Best*, 179 Ill. 2d at 414.

Each branch of government has its own unique powers, and the separation of powers doctrine ensures that the power of two or more branches does not rest in a single branch. *People v. Walker*, 119 Ill. 2d 465, 473 (1988). The legislature is prohibited from enacting laws which infringe upon the inherent powers of the judiciary. *Best*, 179 Ill. 2d at 411; *Agran v. Checker Taxi Co.*, 412 Ill. 145, 149 (1952); see Ill. Const. 1970, art. VI, § 1 (the judicial power is vested in this court, the appellate court, and the various circuit courts). However, we have noted that "legislative limits upon certain types of damages may be permitted, such as damages recoverable in statutory causes of action ***." *Best*, 179 Ill. 2d at 415; see *Jones v. Karraker*, 98 Ill. 2d 487, 492 (1983) (placing a minimum or maximum amount on wrongful death damages is "a legislative prerogative"); *Hall v. Gillins*, 13 Ill. 2d 26, 29 (1958) (the legislature unquestionably has the power to limit wrongful death recoveries because it created both the cause of action and the remedy); see also *Butler v. Chicago Transit Authority*, 38 Ill. 2d 361, 365 (1967); *cf. Cunningham v. Brown*, 22 Ill. 2d 23, 30-31 (1961). Because the General Assembly created statutory custodial claims in section 18—1.1, it could dictate the minimum claim amounts. Further, unlike the damage cap in *Best*, the statutory amounts here set a floor, not a ceiling, for statutory custodial claims. The claim amounts do not operate as an unconstitutional "legislative remittitur" (*Best*, 179 Ill. 2d at 413), but rather as an equitable distribution from a disabled person's estate to those, like Porter, who have provided years of dedicated residential and personal care.

Section 18—1.1 does not violate the separation of powers provision of the Illinois Constitution.

## CONCLUSION

For the reasons we have discussed, we reverse the judgment of the trial court and remand the cause to that court for further proceedings.

*Circuit court judgment reversed;*
*cause remanded.*