749 N.E.2d 946 (2001)
196 Ill.2d 50
255 Ill.Dec. 464
Jerald MILLER, D.D.S., Appellant,
v.
Elaine ROSENBERG, Appellee.
No. 89009.
Supreme Court of Illinois.
April 19, 2001.
Rehearing Denied June 4, 2001.
*948 Terrence S. Carden III, of Carden & Carden, Waukegan, for appellant.
Michael A. Kaczmarek, of Rosenberg & Rosenberg, P.C., Arlington Heights, for appellee.
Justice McMORROW delivered the opinion of the court:
The primary issue presented in this appeal is whether section 2-109 of the Code of Civil Procedure (735 ILCS 5/2-109 (West 1998)), which eliminates the requirement to plead or prove special injury for certain malicious prosecution plaintiffs, is unconstitutional because it violates two provisions of the Illinois Constitution of 1970: the special legislation clause set forth in article IV, section 13 (Ill. Const. 1970, art. IV, § 13), and the right to equal protection guaranteed by article I, section 2 (Ill. Const. 1970, art. I, § 2). The circuit court of Lake County held that section 2-109 violates each of these constitutional provisions. Appeal was taken directly to this court. 134 Ill. 2d R. 302(a). For the reasons that follow, we reverse the judgment of the circuit court and remand this cause for further proceedings.

BACKGROUND
In November 1988, Elaine Rosenberg filed a medical malpractice lawsuit against Dr. Jerald Miller, a periodontist. Rosenberg, who had been a patient of Dr. Miller between March 1982 and February 1987, claimed in her complaint that, during this *949 time period, Miller negligently failed to detect, diagnose and treat an impacted wisdom tooth in Rosenberg's lower right jaw. According to Rosenberg's complaint, she underwent surgery to extract this tooth in March 1987. Rosenberg alleged that as a direct and proximate cause of Miller's negligence in failing to timely diagnose and treat her lower right wisdom tooth, the tooth became embedded in her jawbone, causing parathesia, or numbness, in her jaw and face. In his answer to Rosenberg's complaint, Miller stated that while Rosenberg was under his care, he referred her to an oral surgeon. Rosenberg, however, failed to follow up on this referral. Miller further alleged that two of Rosenberg's prior treaters had also advised her to undergo an examination by an oral surgeon for the possible extraction of the wisdom tooth.
After the completion of discovery, the circuit court granted summary judgment in favor of Miller. On appeal, the appellate court reversed the grant of summary judgment, and remanded the cause to the circuit court. Rosenberg v. Miller, 247 Ill.App.3d 1023, 187 Ill.Dec. 285, 617 N.E.2d 493 (1993). The matter thereafter proceeded to trial. The jury found Miller not liable, and on April 21, 1995, judgment for Miller was entered on the jury's verdict.
On November 8, 1995, Miller filed a three-count malicious prosecution action against Rosenberg and her attorneys. Only count I of Miller's complaint is at issue in this appeal.[1] Miller alleged that, in commencing and continuing to pursue her medical malpractice lawsuit, Rosenberg acted without probable cause and with malice in several respects. According to Miller, Rosenberg "alleged a lack of knowledge of the presence of an impacted lower right wisdom tooth" while she was his patient, "despite previously being advised of this condition." Further, Miller stated that Rosenberg "failed to properly investigate" both "the facts surrounding her claims of negligence" and "whether the alleged negligence of [Miller] was a cause of her claimed injury." Miller also alleged that Rosenberg had filed and continued to prosecute the medical malpractice lawsuit against him "without probable cause in retribution for perceived incourtesies by [Miller toward Rosenberg]," and that Rosenberg's objective was to "obtain money despite the fact that she knew or should have known that any alleged negligence was not a cause of any alleged injuries." Miller further claimed that, as a direct and proximate result of Rosenberg's lawsuit, he "suffered personal and pecuniary injuries, including but not limited to, mental anguish," experienced "increased anxiety," was forced to incur attorney fees and "expend considerable time and energy in the defense of the underlying action," and was "required to defend his professional reputation and will be required to pay increased premiums for professional liability insurance."
In October 1996, Rosenberg filed a motion to dismiss Miller's malicious prosecution action pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 1996)). Rosenberg alleged that, under Illinois law, in order to validly plead a common law cause *950 of action for malicious prosecution, a plaintiff must claim that he suffered injury or damages over and above the ordinary expense and trouble attendant in defending any civil action. Because Miller had not alleged that he suffered a "special injury" as a result of Rosenberg's lawsuit, Rosenberg argued that Miller had not pled a valid malicious prosecution claim.
In addition, Rosenberg maintained in her motion to dismiss that Miller's complaint could not be saved by section 2-109 of the Code of Civil Procedure (735 ILCS 5/2-109 (West 1996)). Section 2-109 provides:
"In all cases alleging malicious prosecution arising out of proceedings which sought damages for injuries or death by reason of medical[,] hospital[,] or other healing art malpractice, the plaintiff need not plead or prove special injury to sustain his or her cause of action. In all such cases alleging malicious prosecution, no exemplary or punitive damages shall be allowed." 735 ILCS 5/2-109 (West 1996).
Rosenberg asserted that the special benefit afforded by section 2-109 to malicious prosecution plaintiffs who also happen to be health care providers violates not only the proscription against special legislation found in article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13), but also the guarantee of due process and equal protection contained in article I, section 2 (Ill. Const. 1970, art. I, § 2). Specifically, Rosenberg contended that section 2-109 is unconstitutional because it arbitrarily and irrationally eliminates the common law special injury requirement for this select group of plaintiffs, thereby making it far easier for these plaintiffs to file and proceed with a malicious prosecution claim than it is for other malicious prosecution plaintiffs who must still establish a special injury.
The circuit court denied Rosenberg's motion to dismiss on January 10, 1997. The court found that although section 2-109 confers special privileges upon health care providers who file malicious prosecution actions which arise out of underlying medical malpractice litigation, this special treatment does not violate the Illinois Constitution. The court reasoned that this classification is warranted by the Illinois General Assembly's determination that there existed a medical malpractice crisis at the time section 2-109 was enacted.
On December 9, 1999, the circuit court held a hearing on a motion in limine filed by Rosenberg which requested that the court bar Miller in his malicious prosecution action from the recovery of attorney fees he incurred in defending against the underlying malpractice lawsuit. The circuit court agreed with Rosenberg that, pursuant to section 2-622(e) of the Code of Civil Procedure (735 ILCS 5/2-622(e) (West 1998)), any claim by Miller to recover attorney fees in connection with the underlying medical malpractice litigation was untimely.[2]
*951 During the hearing on the attorney fee matter, the circuit court judge noted that his previous ruling with respect to the constitutionality of section 2-109 was rendered prior to this court's 1997 decision in Best v. Taylor Machine Works, 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057 (1997). Because the circuit court judge had "never considered this case in light of the Best case," he invited the parties to again submit briefs "to revisit the question of whether or not [section 2-109] is or is not special legislation."
On January 20, 2000, the circuit court declared that section 2-109 violates the Illinois Constitution, specifically, the prohibition against special legislation (Ill. Const. 1970, art. IV, § 13) and the guarantee of equal protection (Ill. Const. 1970, art. I, § 2). In the course of his ruling, the circuit judge stated:
"In my view, [health care providers] have been singled out without there being a rational basis for singling them out and excluding all of the other individuals who might properly bring a malicious prosecution action. * * * [I]f there was a medical malpractice crisis, that does not permit in my view the adoption of an arbitrary or unrelated means of addressing the problem, and that is what I think has been done in this case, where the health care providers have been allowed to have special advantages in a malicious prosecution [action] that no one else in the state shares. That, in my view, is an arbitrary and unrelated means of addressing the problem of a medical malpractice crisis if one exists. * * * There is nothing inherent in being a health care provider that should give them special rights that nobody in the State of Illinois has."
Miller appealed the circuit court's ruling directly to this court. 134 Ill. 2d R. 302(a).

ANALYSIS
This appeal presents the principal issues of whether section 2-109 of the Code of Civil Procedure (735 ILCS 5/2-109 (West 1996)) violates the prohibition against special legislation found in article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13), and the guarantee of equal protection contained in article I, section 2 (Ill. Const. 1970, art. I, § 2). The constitutionality of a statute is a question of law subject to de novo review. Brown's Furniture, Inc. v. Wagner, 171 Ill.2d 410, 420, 216 Ill.Dec. 537, 665 N.E.2d 795 (1996). All statutes are presumed to be constitutional, and the burden of rebutting this presumption is on the party challenging the validity of the statute to clearly establish a constitutional violation. Arangold Corp. v. Zehnder, 187 Ill.2d 341, 351, 240 Ill.Dec. 710, 718 N.E.2d 191 (1999); Russell v. Department of Natural Resources, 183 Ill.2d 434, 441, 233 Ill.Dec. 782, 701 N.E.2d 1056 (1998). A court must construe a statute so as to affirm its constitutionality if the statute is reasonably capable of such a construction. Russell, 183 Ill.2d at 441, 233 Ill.Dec. 782, 701 N.E.2d 1056. Accordingly, "if [a] statute's construction is doubtful, a court will resolve the doubt in favor of the statute's validity." People v. Shephard, 152 Ill.2d 489, 499, 178 Ill.Dec. 724, 605 N.E.2d 518 (1992).
In the matter at bar, Rosenberg urges us to affirm the judgment of the circuit court that the special treatment afforded by section 2-109 to a select group of plaintiffs is unconstitutional. Specifically, section 2-109 relieves health care professionals from the requirement of pleading and proving special injury when those professionals file malicious prosecution suits against unsuccessful medical malpractice plaintiffs. A malicious prosecution action is brought to recover *952 damages suffered by one against whom a suit has been filed maliciously and without probable cause. Cult Awareness Network v. Church of Scientology International, 177 Ill.2d 267, 272, 226 Ill.Dec. 604, 685 N.E.2d 1347 (1997); Schwartz v. Schwartz, 366 Ill. 247, 250, 8 N.E.2d 668 (1937). Generally, in a complaint for malicious prosecution based upon a prior civil proceeding, the plaintiff must allege that the defendant instituted the underlying suit without probable cause and with malice, that the former action was terminated in the plaintiff's favor, and that as a result of the underlying action the plaintiff suffered a special injury beyond the usual expense, time or annoyance in defending a lawsuit. Cult Awareness Network, 177 Ill.2d at 272, 226 Ill.Dec. 604, 685 N.E.2d 1347; Schwartz, 366 Ill. at 250-53, 8 N.E.2d 668. Rosenberg contends that the circuit court correctly ruled that the elimination of special injury as an element of malicious prosecution claims brought by health care professionals arising out of underlying medical malpractice proceedings renders section 2-109 impermissible special legislation and violates the guarantee of equal protection.
Although the prohibition against special legislation and the guarantee of equal protection are not identical, constitutional challenges premised on these provisions are generally judged under the same standards. Best, 179 Ill.2d at 393, 228 Ill.Dec. 636, 689 N.E.2d 1057; In re Petition of the Village of Vernon Hills, 168 Ill.2d 117, 123, 212 Ill.Dec. 883, 658 N.E.2d 365 (1995); Bernier v. Burns, 113 Ill.2d 219, 228, 100 Ill.Dec. 585, 497 N.E.2d 763 (1986). The parties do not dispute that section 2-109 neither affects a fundamental right nor involves a suspect or quasi-suspect classification. See Bernier, 113 Ill.2d at 227-29, 100 Ill.Dec. 585, 497 N.E.2d 763. Therefore, the appropriate standard for our review of the instant constitutional challenge is the rational basis test. Best, 179 Ill.2d at 393, 228 Ill. Dec. 636, 689 N.E.2d 1057; Bernier, 113 Ill.2d at 228, 100 Ill.Dec. 585, 497 N.E.2d 763. Under the rational basis standard, judicial review of a legislative classification is limited and generally deferential. Jacobson v. Department of Public Aid, 171 Ill.2d 314, 323, 216 Ill.Dec. 96, 664 N.E.2d 1024 (1996). "`Under this standard, a court must determine whether the statutory classification is rationally related to a legitimate State interest.'" Best, 179 Ill.2d at 393, 228 Ill.Dec. 636, 689 N.E.2d 1057, quoting Village of Vernon Hills, 168 Ill.2d at 123, 212 Ill.Dec. 883, 658 N.E.2d 365; Bernier, 113 Ill.2d at 228-29, 100 Ill.Dec. 585, 497 N.E.2d 763. A legislative classification must be upheld if any set of facts can reasonably be conceived which justify distinguishing the class to which the statute applies from the class to which the law is inapplicable. In re A.A., 181 Ill.2d 32, 38, 228 Ill.Dec. 905, 690 N.E.2d 980 (1998).
Before this court, Rosenberg's constitutional challenge to section 2-109 rests primarily upon her contention that this provision violates our constitution's prohibition against special legislation. Ill. Const. 1970, art. IV, § 13. Indeed, the circuit court's ruling in the instant cause was almost exclusively premised on its finding that section 2-109 constitutes special legislation. We therefore begin our analysis by addressing this claim.
The special legislation clause of the Illinois Constitution provides:
"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.
*953 The special legislation clause "expressly prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated." Best, 179 Ill.2d at 391, 228 Ill.Dec. 636, 689 N.E.2d 1057; Village of Vernon Hills, 168 Ill.2d at 122, 212 Ill.Dec. 883, 658 N.E.2d 365. The purpose of the prohibition against special legislation is to "prevent arbitrary legislative classifications that discriminate in favor of a select group without a sound, reasonable basis." Best, 179 Ill.2d at 391, 228 Ill.Dec. 636, 689 N.E.2d 1057. In determining whether section 2-109 constitutes impermissible special legislation, we must ascertain whether the classification created by that provision is "based upon reasonable differences in kind or situation, and whether the basis for the classifications is sufficiently related to the evil to be obviated by the statute." Best, 179 Ill.2d at 394, 228 Ill.Dec. 636, 689 N.E.2d 1057.
Section 2-109 is one of a number of provisions added to the Code of Civil Procedure in 1985 by Public Act 84-7, eff. August 16, 1985,[3] which was passed by the Illinois General Assembly in response to what was perceived to be a crisis in the area of medical malpractice litigation. See DeLuna v. St. Elizabeth's Hospital, 147 Ill.2d 57, 65, 167 Ill.Dec. 1009, 588 N.E.2d 1139 (1992). By enacting this package of medical malpractice reform legislation, the General Assembly intended to "comprehensively * * * regulate medical malpractice litigation, with a view to reducing the number of such suits and the size of the awards which are given in those in which the plaintiff successfully establishes his claim." Ill. Ann. Stat., ch. 110, par. 2-109, Historical & Practice Notes, at 30 (Smith-Hurd Supp. 1992).
Shortly after the passage of Public Act 84-7, five provisions of that Act were challenged as unconstitutional in Bernier v. Burris, 113 Ill.2d 219, 100 Ill.Dec. 585, 497 N.E.2d 763 (1986). In Bernier, this court determined that the establishment of review panels in medical malpractice cases violated provisions in the Illinois Constitution with respect to the source of judicial power and the jurisdiction of the circuit courts (see Ill. Const. 1970, art. VI, §§ 1, 9). Bernier, 113 Ill.2d at 233, 100 Ill.Dec. 585, 497 N.E.2d 763. However, we also held that the remaining four provisions of Public Act 84-7 challenged in Bernier were not constitutionally infirm. This court concluded that the periodic payment of certain damages, the modification of the collateral source rule in medical malpractice actions, the elimination of punitive damages in actions for medical malpractice, and a sliding scale of the allowable fees an attorney may charge in representing a medical malpractice plaintiff were all rationally related to the legitimate government interest of "reduc[ing] the burdens existing in the health professions as a result of the perceived medical malpractice crisis." Bernier, 113 Ill.2d at 252, 100 Ill.Dec. 585, 497 N.E.2d 763.
In his brief to this court, Miller contends that, although section 2-109 was not among the statutory provisions at issue in Bernier, the legitimate governmental interests identified in that decision with respect to Public Act 84-7 apply with equal *954 force to section 2-109. Miller asserts that our analysis in Bernier therefore leads to the conclusion that the classification in section 2-109 is rationally related to the legitimate legislative goal of remedying the perceived medical malpractice crisis, specifically, that it reduces the burdens against health care professionals and creates a disincentive for the filing of meritless medical malpractice lawsuits.
Rosenberg, echoing the reasoning employed by the circuit court in its ruling, responds that section 2-109 constitutes impermissible special legislation because there is no rational relation between a legitimate state interest and the grant of a special benefit to health care providers who file malicious prosecution actions against unsuccessful medical malpractice litigants. Rosenberg labels as "fallacious" the argument advanced by Miller that section 2-109 bears a rational relation to the perceived medical malpractice crisis. Specifically, Rosenberg contends that in contrast to the statutory provisions of Public Act 84-7 which were upheld in Bernier and "were all directly related to the conduct of the medical malpractice litigation itself," section 2-109 "does not apply to medical malpractice litigation in any way during its pendency * * * [and] no rational argument can be made that health care providers deserve greater post-litigation rights when they have allegedly been sued with malice and without probable cause than any other similarly situated civil defendant." Rosenberg therefore concludes that section 2-109 arbitrarily and irrationally eliminates the common law special injury requirement for this select group of malicious prosecution plaintiffs. We reject Rosenberg's arguments.
As stated, it is the burden of the party challenging the validity of a statute to rebut the presumption of constitutionality. Arangold, 187 Ill.2d at 351, 240 Ill.Dec. 710, 718 N.E.2d 191; Russell, 183 Ill.2d at 441, 233 Ill.Dec. 782, 701 N.E.2d 1056. We hold that Rosenberg has failed to clearly establish that the provisions of section 2-109 violate the proscription against special legislation. Contrary to Rosenberg's assertions that the classification in section 2-109 is irrational and arbitrary, we find that there are discernable, rational reasons why the General Assembly distinguished between health care professionals who file malicious prosecution suits against unsuccessful medical malpractice plaintiffs and all other individuals who may bring a malicious prosecution action. The classification is based upon "a rational difference of situation or condition" between those persons included in the classification and excluded from it (Vernon Hills, 168 Ill.2d at 123, 212 Ill.Dec. 883, 658 N.E.2d 365), and the classification bears a reasonable relationship to the purposes of the statute.
As we observed in Bernier, the history of Public Act 84-7 "amply demonstrates that it was enacted in response to what was perceived to be a crisis in the area of medical malpractice." Bernier, 113 Ill.2d at 229, 100 Ill.Dec. 585, 497 N.E.2d 763; see also DeLuna, 147 Ill.2d at 66, 167 Ill.Dec. 1009, 588 N.E.2d 1139; Ill. Ann. Stat., ch. 110, par. 2-109, Historical & Practice Notes, at 30 (Smith-Hurd Supp. 1992). The primary intent of the General Assembly in passing this medical malpractice reform package was to "reduce the burdens existing in the health professions as a result of the perceived malpractice crisis." Bernier, 113 Ill.2d at 252, 100 Ill.Dec. 585, 497 N.E.2d 763. To this end, certain statutory provisions were enacted with the specific purpose of operating "as a disincentive for filing frivolous suits." Bernier, 113 Ill.2d at 252, 100 Ill.Dec. 585, 497 N.E.2d 763; see also Ill. Ann. Stat., ch. 110, par. 2-109, Historical & Practice Notes, at 30 (Smith-Hurd Supp. 1992). Section 2-109 is such a provision. As *955 commentators have explained, the General Assembly intended that section 2-109 "liberalize the availability of a suit for malicious prosecution as a means of punishing and discouraging the filing of ill-grounded medical malpractice cases. It does so by removing the need to show special injury in order to recover in such cases. It mitigates the effect of this provision by foreclosing the award of exemplary or punitive damages * * *." Ill. Ann. Stat., ch. 110, par. 2-109, Historical & Practice Notes, at 31 (Smith-Hurd Supp. 1992).
This understanding of the purpose of section 2-109 refutes Rosenberg's argument that there is no rational relationship between this statutory provision and the perceived medical malpractice crisis. In enacting section 2-109, the legislature eased the burden of bringing a malicious prosecution action for health care professionals with the specific intent of not only "discouraging" the filing of frivolous medical malpractice lawsuits, but also as a way of "punishing" those plaintiffs who bring baseless medical malpractice claims. The legislature could have reasonably believed that liberalizing the availability of a malicious prosecution action for health care providers is an effective means of curtailing meritless medical malpractice litigation. The possibility of being a defendant in a subsequent malicious prosecution suit where the element of special injury is not required to be pled or established would likely provide a strong incentive to a potential medical malpractice plaintiff to thoroughly investigate the basis of the claim before filing suit. Those potential plaintiffs who conclude that there is probable cause to file a medical malpractice action would have no reason to be discouraged from bringing suit, while those whose claims lack probable cause would be deterred from filing an action.
Rosenberg contends, however, that there is further support for her position that the special rights conferred upon health care providers by section 2-109 are not rationally related to a legitimate state interest. Rosenberg observes that as part of Public Act 84-7, the General Assembly also enacted section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 1998)), which mandates that before a medical malpractice action can be filed, the party bringing the action must obtain a certificate from a qualified health professional which certifies "that there is a reasonable and meritorious cause for the filing of such action." 735 ILCS 5/2-622(a)(1) (West 1998). Rosenberg asserts that no other civil defendant in Illinois is entitled to a prelawsuit opinion witness certification that the case against him has merit, and that as a result of the screening provisions contained within section 2-622, a health care provider is the defendant least likely to be subjected to a maliciously prosecuted action. We reject Rosenberg's argument. As this court stated in Bernier, "[i]n attempting to remedy a perceived ill, the legislature is not limited to choosing the single, most effective remedy against the problem but rather may decide to attack it along several fronts simultaneously." Bernier, 113 Ill.2d at 252, 100 Ill.Dec. 585, 497 N.E.2d 763. We conclude that the legislature could have reasonably believed that baseless medical malpractice claims could most effectively be deterred by enacting both section 2-109 and section 2-622.
In a final effort to lend support to her position that the elimination of the special injury requirement for health care providers is a constitutionally impermissible "special benefit," Rosenberg argues that the classification contained within section 2-109 is analogous to the legislative classification in section 2-1117 of the Code of Civil Procedure which this court found to *956 constitute special legislation in Best v. Taylor Machine Works, 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057 (1997). In Best, the plaintiff challenged as unconstitutional several provisions contained within Public Act 89-7, a legislative package more popularly known as the Civil Justice Reform Act of 1995. Applying analytical principles consistent with those used in Bernier, we held in Best that two provisions of Public Act 89-7 which amended the Code of Civil Procedure represented unconstitutional special legislation: the cap placed on compensatory damages for noneconomic injury in section 2-1115.1 (735 ILCS 5/2-1115.1 (West 1996)), and the application of the principle of joint and several liability in medical malpractice actions provided in section 2-1117 (735 ILCS 5/2-1117 (West 1996)). Best, 179 Ill.2d at 409, 429, 228 Ill.Dec. 636, 689 N.E.2d 1057.
As we explained in Best, Public Act 89-7 rewrote section 2-1117 of the Code of Civil Procedure to abolish the common law doctrine of joint and several liability, and substituted in its place several liability based upon proportionate fault. Best, 179 Ill.2d at 423, 228 Ill.Dec. 636, 689 N.E.2d 1057. However, although subsection (a) of section 2-1117 purported to eliminate the doctrine of joint and several liability for all plaintiffs, subsection (b) of that provision provided that if the damages cap in section 2-1115.1 was invalidated, the doctrine of joint and several liability was automatically reinstated, but only for medical malpractice defendants. Because we held that the cap on damages was unconstitutional, subsection (b) was activated.
We determined in Best that the abatement of proportionate several liability solely in the context of medical malpractice actions violated the prohibition against special legislation because it arbitrarily and irrationally benefitted only those plaintiffs filing medical malpractice claims.
Best, 179 Ill.2d at 431-32, 228 Ill.Dec. 636, 689 N.E.2d 1057. We observed that by virtue of the benefit contained in section 2-1117(b), a select group of tort plaintiffs would be relieved from the burden faced by all other plaintiffs of "bring[ing] several separate actions to recover full compensation for their injuries," and that this select group did not, unlike all other tort plaintiffs, have to "bear the risk of any tort-feasor being insolvent or otherwise unavailable." Best, 179 Ill.2d at 431, 228 Ill.Dec. 636, 689 N.E.2d 1057. We concluded that there was "no discernable rational basis for treating medical malpractice plaintiffs differently from other plaintiffs in death, bodily injury and property damage cases," and stated that "[i]f in fact, a real need exists to eliminate the harshness of several liability, then logically this need exists for all plaintiffs who have suffered physical injury or loss of property at the hands of joint tort-feasors, and not just medical malpractice plaintiffs." Best, 179 Ill.2d at 431-32, 228 Ill.Dec. 636, 689 N.E.2d 1057.
Relying upon this statement from our opinion in Best, Rosenberg asserts that "[t]his reasoning applies with equal force to prove the unconstitutionality of section 2-109. Rosenberg contends that the special benefit afforded to health care providers by section 2-109 is just as arbitrary and irrational as the special treatment provided to medical malpractice plaintiffs in section 2-1117. Echoing our statement in Best, Rosenberg concludes that "[i]f, in fact, a real need exists to eliminate the harshness of the special injury or special damages requirement of malicious prosecution actions, then logically that need exists for all defendants who suffered from maliciously prosecuted lawsuits, not just health care providers." We find Rosenberg's argument unpersuasive.
As previously discussed, we find that the classification in section 2-109 is reasonably *957 related to a legitimate governmental purpose. It has been amply demonstrated that, in enacting the provisions contained within Public Act 84-7, the legislature intended to remedy what it perceived to be a crisis in medical malpractice litigation. The provisions of section 2-109 are reasonably related to this legitimate public interest by serving as a deterrent against, and punishment for, the filing of frivolous medical malpractice claims. Section 2-109, therefore, is clearly distinguishable from section 2-1117, which appeared to be "designed primarily to confer a benefit on a particular private group without a reasonable basis, rather than to promote the general welfare." Best, 179 Ill.2d at 395, 228 Ill.Dec. 636, 689 N.E.2d 1057.
Section 2-109 is distinguishable from section 2-1117 in an additional respect. In Best, our finding that section 2-1117 violated the special legislation clause was also premised upon the fact that section 2-1117(b) contradicted the purpose stated by the General Assembly for enacting proportionate several liability. Although the preamble to Public Act 89-7 declared that "it is the public policy of this State that a defendant should not be liable for damages in excess of its proportionate share of fault," we noted that section 2-1117(b) "inexplicably contradict[ed] this rationale." Best, 179 Ill.2d at 432, 228 Ill.Dec. 636, 689 N.E.2d 1057. We explained that "[i]f the premise underlying Public Act 89-7's abolition of joint and several liability is that the doctrine unfairly permits a plaintiff to recover more in damages than is justified from an individual defendant then, logically, that unfairness is only exacerbated if there is no cap on the total amount of the damages which the plaintiff can recover." Best, 179 Ill.2d at 432, 228 Ill.Dec. 636, 689 N.E.2d 1057. We therefore concluded that the invalidation of the damages cap did not justify or explain the exemption provided by section 2-1117(b) from the general rule of several liability, and that "treating these plaintiffs differently in the absence of a damages cap is directly contrary to the legislature's acknowledged purpose for enacting proportionate several liability." Best, 179 Ill.2d at 432-33, 228 Ill.Dec. 636, 689 N.E.2d 1057. In contrast to section 2-1117, section 2-109 does not contravene the stated policy of Public Act 84-7 to remedy the malpractice crisis. Instead, the provisions of section 2-109 further that policy by discouraging and penalizing meritless medical malpractice claims.
In sum, Rosenberg has failed to satisfy her burden of proof to clearly establish that section 2-109 constitutes impermissible special legislation in violation of article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13). We find that the classification contained in section 2-109 is rationally related to the legitimate governmental interest of curtailing frivolous medical malpractice actions. Accordingly, section 2-109 does not constitute special legislation.
Raising arguments identical to those made in support of her special legislation claim, Rosenberg next asserts that section 2-109 violates the guarantee of equal protection contained within article I, section 2, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 2). The equal protection clause requires that the government treat similarly situated individuals in a similar manner. A.A., 181 Ill.2d at 37, 228 Ill.Dec. 905, 690 N.E.2d 980. As previously stated, an equal protection challenge is generally judged under the same standards applicable to a special legislation challenge. Best, 179 Ill.2d at 393, 228 Ill.Dec. 636, 689 N.E.2d 1057; Village of Vernon Hills, 168 Ill.2d at 123, 212 Ill.Dec. 883, 658 N.E.2d 365; Bernier, 113 Ill.2d at 228, 100 Ill.Dec. 585, 497 N.E.2d 763. Because section 2-109 involves *958 neither a suspect class nor a fundamental right, it is subject only to deferential review under the rational basis test. As we have already discussed, section 2-109 satisfies the rational basis test. Therefore, the classification contained within that section is neither discriminatory nor arbitrary. Accordingly, section 2-109 does not contravene principles of equal protection.
In her written submission to this court, Rosenberg also makes a brief argument, as she did before the circuit court, that section 2-109 violates the guarantee of due process found in article I, section 2, of our constitution (Ill. Const. 1970, art. I, § 2). In support of this claim, Rosenberg relies on the same arguments raised with respect to her special legislation and equal protection challenges, stating that they "apply with equal validity to establish a violation of the due process clause." We disagree. As in analyzing a claim of special legislation or equal protection in which no fundamental rights are burdened, "the appropriate inquiry under due process is whether the legislation bears a rational relationship to a legitimate governmental interest." Bernier, 113 Ill.2d at 228-29, 100 Ill.Dec. 585, 497 N.E.2d 763. Because section 2-109 meets the rational basis requirement, it does not violate the due process clause.

CONCLUSION
For the foregoing reasons, we hold that section 2-109 of the Code of Civil Procedure (735 ILCS 5/2-109 (West 1998)) does not violate the prohibition against special legislation set forth in article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13). We also hold that section 2-109 does not violate the right to equal protection guaranteed by article I, section 2, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 2), or the guarantee of due process in article I, section 2, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 2). Accordingly, we reverse the judgment of the circuit court and remand this cause for further proceedings.
Circuit court judgment reversed; cause remanded.
NOTES
[1] Counts II and III of Miller's complaint alleged that Rosenberg's attorneys acted maliciously and without probable cause in filing and pursuing Rosenberg's medical malpractice lawsuit. The circuit court granted the attorneys' motion for summary judgment, holding that Miller had not established malice or the absence of probable cause on the part of Rosenberg's counsel. On appeal, the appellate court affirmed the judgment of the circuit court. Miller v. Rosenberg, No. 2-97-0337, 294 Ill.App.3d 1111, 242 Ill.Dec. 578, 721 N.E.2d 857 (1998) (unpublished order under Supreme Court Rule 23).
[2] In his notice of appeal to this court, Miller indicated that he was also challenging the circuit court's ruling barring his attorney fees as an element of damages in his malicious prosecution claim. Miller also makes passing reference to this ruling in the "nature of the action" and "statement of facts" portion of his brief. Miller, however, has made no argument citing authority with respect to the attorney fee issue. The passing references made by Miller to the attorney fee issue, without argument or citation to authority, is insufficient to preserve this issue on appeal. 177 Ill.2d R. 341(e)(7) (argument portion of brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on * * * [and][p]oints not argued are waived"). Accordingly, we express no opinion on the circuit court's attorney fee ruling.
[3] Public Act 84-7 also added sections 2-611.1, 2-622, 2-1010, 2-1012 through 2-1018, 2-1020, 2-1114, 2-1115 and 8-2501 to the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2-611.1, 2-622, 2-1010, 2-1012 through 2-1018, 2-1020, 2-1114, 2-1115, 8-2501), as well as a new part 17, consisting of sections 2-1701 through 2-1719, inclusive (Ill. Rev. Stat. 1985, ch. 110, pars. 2-1701 through 2-1719). Further, Public Act 84-7 amended sections 2-1109, 2-1205, 8-2001 and 8-2003 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2-1109, 2-1205, 8-2001, 8-2003).